PROVOSTY, J.
The plaintiff brings this suit, in his quality of forced heir of his mother, to set aside, as simulated, a sale made by his mother to the defendants, his brother and sister, of 36 shares of the capital stock of the New York Consolidated Gaslight Company, and to recover his third of said shares of stock, or, in the alternative, the value thereof, alleged to be $2,400. He demands, furthermore, one-third of $3,600, alleged to have been left in the possession of the defendant Sylvester Laporte by the mother, and not yet accounted for.
The statement of the facts of the case begins with the death of the father of the litigants, in January, 1897. His estate, amounting to $20,406.22, was partitioned by the surviving widow and her children among themselves; the widow taking one-half as survivor in community; the present litigants, each one-sixth. In the partition the widow got the 36 shares of stock in question, plus $2,134 in cash, and $2,265 in bank certificates equivalent to cash. She turned over everything to her son Sylvester; she knowing nothing about business, and the state of her health not permitting her to attend to any business. Plaintiff was the elder son, but was at serious disagreement with his mother, as the result of bickerings growing out of the fact that he had married a Protestant, to the displeasure of his mother, who was a devout Catholic. The two brothers were married, and had homes of their own. The daughter lived with her mother. • From the fact that the rent was $10 a month, we infer that their establishment, which consisted of themselves and one servant, and a hired nurse when there was one, was on a moderate footing. Mrs. Laporte was economical. Sylvester furnished money for the home expenses as needed.
One month exactly after the partition the sale in question was made. The motive in making this sale could not have been to invest the price to better advantage. The shares of stock were a good investment, yielding 8 per cent, dividends per annum, paid quarterly. They were worth $167 per share, or $6,012, on the markets of the world, and the price of the sale was $100 per share, or $3,600. It could not have been that Mrs. Laporte needed ready money, for she was economical and her expenses were small; and just one month previously she had put all the remainder of her fortune, $4,399, in the hands of Sylvester, in cash, and nothing shows that the funds were not still idle in bank. The inference is strong that, 'apprehending her span of life might be short, she wished to place the property beyond the reach of the obnoxious son.
Sylvester borrowed from a bank $3,600 on the joint note of himself and sister, and took a notary to the house of his mother; and the act of sale was passed in due form, and the money paid in the presence of the notary and witnesses. The sale was passed in the dining room. As soon as it was completed, the son escorted the sick mother back to her bedroom; she carrying the bundle of money. Thereafter the daughter, companion, and nurse of the mother never saw this money. Sylvester says that he does not know what the mother did with it, except that a month afterwards she gave him $1,200 in payment of a judgment which some time before the daughter had obtained against her for services as nurse. The daughter, by the way, had not heard of this payment up to the trial of this case, four years afterwards. The money was borrowed and the note executed on the 2d of July, 1897. The next day, on the 3d, the note was paid; the loan transaction having been effected at a cost of 80 cents. Sylvester Laporte is a business man, and knew that the shares of stock could be transferred just as validly without the expense of taking a notary to the house of his mother, and imposing upon his sick mother the trouble of the execution of a notarial act. He was the custodian of the entire fortune of his mother — cash and all. The ceremony of *961 counting the $3,600 in the presence of the notary and witnesses would seem, therefore, to have been a useless one. It would look very much as if the object of all these forms had been merely to give color to the transaction.
When asked how she paid for her half of the shares of stock, Emily Laporte answered that she paid for it with her own money, inherited from her father. When asked where she kept that money, she answered: “I don’t care to answer that question.” And when forced to answer, she said she had given it in the hands of her brother Sylvester. The fact is that she had on that day $1,134.54 to her credit in bank, but that the money was not used at all in making the purchase.
Plaintiff did not know of the borrowing of the $3,600 until after the ease had been submitted. At his request the case was reopened to admit the evidence on the subject of this transaction. Thereupon the defendant Sylvester Laporte, who on the first trial had not testified, took the stand and testified at considerable length. He explained all about the loan of $3,600, but said not a word about the return of the money to the bank the next day. Knowledge of this payment came to the plaintiff after the case had been again submitted, and a second time the case was re-opened at his request to admit further evidence. At this third hearing, Laporte explained that the $3,600 paid by him to the bank was not the same money he had used in making the sale, but was money he had in his bank box at the time he borrowed the $3,600 from the bank, and that the money in his bank box had been borrowed by him through the intermediary of a man who had since committed suicide, and that the dead man had refused to reveal to him the name of the lender.
When called upon to produce the books in which he kept the account of his mother’s affairs, or the memoranda he must have made in the course of the business, these books or memoranda had been either burnt or lost, and he could not remember particulars, but had to resort to estimates.
We have no hesitation whatever in holding that the sale was a simulation, and that it must be set aside.
On the other part of the demand, plaintiff is correct in his contention that the burden is on the defendant Sylvester Laporte to account for the moneys received by him for his mother, namely, $4,399 at one time, and $1,800 at another. From the present state of the record, the court would have to give judgment against Sylvester Laporte for a considerable amount on this demand. He has contented himself with making vague and general statements and giving estimates, instead of making a genuine effort to produce the facts before the court. He and his sister know who the physicians and nurses were who were employed, and how much was paid to them. The books of the debenture company ought to be accessible. If not, the fact of their inaccessibility ought to be shown. On this demand the case has really not yet been tried. We will remaud it for that purpose.
Plaintiff is entitled to judgment against the defendants in solido for one-third of the price at which the latter sold the shares of stock, plus legal interest from the day of the sale, but in coming to render this judgment we are met with this difficulty: The mother made a will by which she gave to Emily Laporte $450 and to Sylvester Laporte $750, by way of extra portion. In the settlement between the parties, this has to be reckoned! with. The defendants contend that the entire fortune of the mother, apart from household furniture, consisted of $300. Judging, from the record, this is very wide of the. mark; but what the true situation may, on: further trial, be proved to have been, this court does not know. In this condition of the record, the court deems it wiser to remand the whole case for the settlement of the accounts between the parties, with leave to both parties to amend their pleadings.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the sale made by Catherine Laporte to Sylvester J. Laporte and Emily M. Laporte on the 2d July, 1897, of 36 shares of stock of the New York Consolidated Gaslight Company, be set aside and annulled, as a pure simulation, and that this case be remanded for further trial, with leave to both parties to amend their pleadings.