YARRUT, Judge.
This is a suit against Defendants for an accounting of funds entrusted to them as President and Vice-President, respectively, of Plaintiff, and for a money judgment for the amount not properly accounted for.
*277 Plaintiff charges that an audit of its financial affairs by F. W. Lafrentz & Co., Certified Public Accountants, as of September 30, 1962, covering the period from March 1, 1959 through September 30, 1962, revealed expenditures of its funds in the approximate sum of $237,476.51, for which no invoices, vouchers or other supporting documents are found in its records. The expenditures, as reflected in the audit, are listed on Schedules A, B, C and D attached and made part of Plaintiff’s petition, and the powers of its Board of Directors in financial matters are stated in Article XI of its charter as follows:
“The Board of Directors shall have the .following powers:
“(a) To make such expenditures and to sell and purchase property for the Association not exceeding One Thousand ($1,000.00) Dollars in any one instance; provided that by a petition addressed to the Board of Directors and signed by a majority of the members, the Board of Directors shall have the power in its discretion to make the expenditures and to sell and purchase property for the Association in such amounts as may be authorized by the petition or necessary for compliance with the petition;”
Plaintiff further contends the minutes of the meetings of its Board of Directors contain no general or special authorization directing or permitting Defendants, or either of them, to make the expenditures referred to in the schedules attached to its petition.
The Court ordered the accounting. After the account was filed and testimony of Defendant Heuer, taken under cross-examination, to the effect the money was spent for lobbying and influencing public offi-ciáis and legislators to enact legislation beneficial to the Plaintiff, and without giving Plaintiff an opportunity to rebut Defendant Heuer’s account and testimony, the District Judge dismissed Plaintiff’s suit and gave the following written reasons:
“This Court is a Court of Equity as well as a Court of Law.
“Historically Courts of Equity have applied the maxim that its processes are available only to those who come into it with ‘Clean Hands.’ The evidence in this matter, without reviewing it here in specific detail, convinces the Court that the plaintiff, at the very least, has been guilty of practices which do not commend themselves to a Court of Equity in a suit for an accounting.
“Two issues are involved. 1) Has the defendant rendered an accounting? 2) Were the disbursements made with the appropriate authority?
“The defendant has rendered an accounting — as to the dollars.
"The Court, considering the whole course of conduct of the plaintiff and the general authority it conferred upon the defendant, its official representative, by expressed and implied action, has reached the conclusion that the plaintiff is in no position to invoke the processes of this Court to demand a judgment against the defendant.
“This is not to say that this Court condones, approves or excuses certain expenditures made by the defendant. Expenditures of a proper nature are inextricably commingled with highly questionable disbursements.
“It is the Court’s conclusion from the evidence, that the plaintiff in this case is not entitled to the relief it seeks. The judgment rendered in this matter does not absolve the defendant of any improper action reflected in this record. The Court only holds that in an action of this nature, the Plaintiff, to recover a judgment from one of its former offi *278 cers, must come into Court with Clean Hands.”
From the District Judge’s reasons it is clear that the two questions are: First, did Defendant William L. Heuer, Jr., dispose of the funds of the Association in the manner which he claims? Second, if he did, was he authorized to do so?
Since this is a suit for an accounting by a fiduciary to his principal, the burden is on the latter to submit convincing proof before he can prevail. LSA-C.C. Arts. 3004, 3005; Bauer v. Albers, 187 La. 496, 175 So. 39; Rose v. Shaw, 144 La. 571, 80 So. 727; Laporte v. Laporte, 109 La. 958, 34 So. 38; Justin v. Delta Motor Line, Inc., La.App., 43 So.2d 53; Wilkening Mfg. Co. v. Crawford Co., Inc., La.App., 16 So.2d 210; City of Gretna v. Gosserand, La.App., 191 So. 750; Rosenak v. Poller, 110 U.S.App.D.C. 205; 290 F.2d 748; Cafritz v. Corporation Audit Co., D. C., 60 F.Supp. 627; 1 Am.Jur.2d Sec. 62, p. 437. Moreover, when a fiduciary is under a duty to account and he fails to do so, the only inference to be drawn is that he could not satisfactorily explain the transaction without an admission of guilt. Cafritz v. Corporation Audit Co., supra.
In the record is a copy of the transcript of the hearing before the Board of Directors of Plaintiff, on May 20, 1963, from which transcript it appears that, following Defendant Heuer’s tenure as President, the audit referred to, supra, was made which revealed the expenditures for which no invoices, vouchers, or other supporting documents were to be found in its records. When asked about these funds, Heuer refused to give Plaintiff any explanation whatsoever. He was accordingly charged with a refusal to account and, at the hearing on May 20, 1963, before a “closed” meeting of Plaintiff’s Board of Directors and members, and represented by counsel he pled the “Fifth Amendment” against self-incrimination, rather than account to Plaintiff for the funds he admittedly was' entrusted with.
As to the sufficiency of the accounting and the evidence in support of the expenditures claimed by the Defendants, the-only evidence in the record is the testimony of Heuer, himself, whose only defense is-that the funds were spent with the knowledge and approval of Plaintiff’s Board of Directors.
Although the true facts pertaining to the-expenditure of Plaintiff’s funds were peculiarly within Heuer’s knowledge, he was. content, at the trial, to make estimates and' vague, general statements concerning the-money, which do not constitute a proper-accounting. Wootton Land & Fuel Co. v. Ownbey, 8 Cir., 265 F. 91; Laporte v. Laporte, supra; Cafritz v. Corporation Audit Co., supra.
Especially in view of the many discrepancies in Heuer’s testimony and the-inconclusiveness of the memoranda which, he produced, referred to below, we do not. believe the District Court should have accepted such evidence as true without giving-Plaintiff an opportunity for rebuttal.
For example, when questioned about the-checks on Schedule D, payable to P. Cook, Heuer said that these checks covered' stenographic services. This is the same-explanation he had previously given to-Plaintiff’s Board of Directors at its closed meeting. The audit of F. W. Lafrentz 8c Co. is a part of the record, having been-, offered in connection with the proof preceding the default judgment against him. The audit reflects that these checks were-charged to “Stenographic Services.”' When questioned concerning these checks-at the trial, Heuer replied that Miss Cook was a stenographer. Upon further questioning, Heuer finally conceded that NBC Check No. 41914, for $1,043.26, payable to-the order of P. Cook, although charged to Stenographic Services, was in fact a payment to P. Cook for the procuring of’ “hostesses” (female companions) for the- *279 public officials. Heuer’s further testimony is that he did not remember whether he had placed his endorsement below that of “P. Cook” on the reverse of the check. However, the District Judge observed an obvious erasure on the reverse of the check, and although the case was terminated before Plaintiff had an opportunity to offer Mr. Gilbert Fortier, a handwriting expert as a witness, we must consider here the fact of the erasure and that Defendant did not deny having endorsed the check himself, although he claimed he ■did not remember whether he had endorsed it or not. Heuer said that “P. Cook” did -not work in the office of Plaintiff; never ■did any work for any member of Plaintiff •except for himself; and that she had no ■files that he knew of.
Further, when Heuer was questioned about the checks on Schedule B, made payable to his own order and cashed by him, totalling $127,550.00, he said he would first have to consult his memoranda before he ■could testify in detail about the manner in which he disposed of these funds. When questioned if he had memoranda explaining these expenditures, he said “Yes.” When asked if he had these memoranda with him, he said “No.” When asked if he had consulted these memoranda prior to testifying, he said “No.” When asked when he last had occasion to see these memoranda, he gave the time as approximately one month before the trial. The Court ordered Heuer to bring in the memo-randa he said he had.
At this point in the trial, the possibility existed that Heuer would prepare memo-randa between the close of the first day of the trial on the 23rd of September and the beginning of the second day of the trial on the 24th. For this reason, he was asked to describe the paper upon which the memoranda had been made, but was not able to do so. Nor was he able to tell how many sheets of paper the memoranda consisted of. On the following morning, the second day of the trial, September 24, Heuer produced seven sheets of paper which were marked “A,” “B,” “C,” “D,” “E,” “F” and “G.” Although he had been directed by the Court only to bring in the memoranda to which he referred in his testimony on the 23rd, he produced “A” and “B,” with the statement that they had been prepared the night before. Later in his testimony, he was questioned again concerning when he prepared sheets “A” and “B,” and he said that he did not remember whether he had prepared them on the night before the trial began, namely, the evening of September 22, or on the night following the first day of the trial, namely, September 23. He also said that he prepared “A” and “B” by referring to “C,” “D,” “E,” “F” and “G.” When asked when he had entered the dollar amounts appearing in the margin of Exhibits “C” through “G,” Heuer said he did not remember. Heuer knew that when the accounting was demanded of him, he would have to explain what he had done with the specific amount of money ($237,-476.51). There was nothing to prevent his preparing memoranda and filling in the desired amounts. Although he testified that he may have prepared “A” and “B” the night before the trial started, and although he testified that he prepared “A” and “B” with “C” through “G” as a reference, he had also testified that he had not seen or looked at Exhibits “C”. through “G” for approximately one month prior to the trial.
Heuer further testified that he had not shown these exhibits to his attorney in preparing for trial, and that Exhibits “C” through “G” were not prepared contemporaneously with the transactions which they reflect, but were written up “later on.” When asked whether he had, in fact, made memoranda of these transactions at the time they occurred, he said that he had; but, when he was asked to produce these original memoranda, he said that he did not have them and did not know what had become of them.
We do not question the statement by the District Judge that the law will *280 not give relief to any who were engaged in an illegal venture, and that one seeking relief must come into court with “clean hands.”
However, the acceptance of the testimony of Heuer that he committed the criminal act of “bribing” public officials with the knowledge and consent of Plaintiff, his principal, but denying to Plaintiff its day in court to refute such a charge, is a denial of due process of law. Plaintiff should have been given an opportunity to disprove the Court’s finding it had “unclean hands” when it entered court demanding an accounting.
Counsel for Defendants argue that, in former sessions of the Legislature in 1956— 1958, the officers of Plaintiff spent considerable money in an unsuccessful attempt to get the Legislature to adopt legislation that was in the interest of Plaintiff, while Heuer was successful in getting legislation passed that increased the wages and fees of the pilots over $600,000.00 a year. For this reason it is contended that the present Board of Directors of Plaintiff are estopped to deny that Heuer was authorized to expend the money for the passage of the beneficial legislation.
While we are not, at this time, passing on the merits of the case, we do find it necessary to have the case remanded to give Plaintiff the opportunity to answer all these contentions which the District Court denied it under the “Unclean Hands” doctrine. The ultimate decision of the case must necessarily wait until Plaintiff has had a chance to offer any evidence it considers appropriate in rebuttal of Heuer’s testimony.
Accordingly, the judgment of the District Court is annulled and set aside, and the case remanded to the District Court to permit Plaintiff to produce any admissible evidence it deems proper to rebut the testimony and accounting made by Defendant Heuer; costs of this appeal to be paid for by Defendant Heuer; other costs to await the final determination of this litigation.
Judgment annulled and case remanded with instructions.