292 So.2d 831 (1974)
Jane Darling HODSON, Plaintiff-Appellee,
v.
Myrl Jamison HODSON, Defendant-Appellant.
No. 12243.
Court of Appeal of Louisiana, Second Circuit.
March 19, 1974.
Rehearing Denied April 23, 1974.
Writ Refused June 7, 1974.
*832 Hal V. Lyons, Glen H. Smith, J. Edwin Bailey, Jr., Shreveport, for defendant-appellant.
Love, Rigby, Dehan & Love, by Kenneth Rigby, Shreveport, for plaintiff-appellee.
Before AYRES, BOLIN and PRICE, JJ.
AYRES, Judge.
Plaintiff and defendant were formerly husband and wife. In the present proceedings instituted by her against him, plaintiff seeks a liquidation and settlement of the community of acquets and gains theretofore existing between them. Plaintiff particularly seeks (1) to be recognized as the owner of an undivided community interest in certain described assets, real and personal, rights and credits; (2) an inventory of the estate; (3) an accounting by her former husband of her interest in the community estate; (4) a partition of the property by licitation; and (5), after payment of costs of the proceedings and the community debts, that she be paid her share of the proceeds.
After trial, there was judgment recognizing plaintiff as the owner of an undivided one-half interest in and to the remaining net value as of October 4, 1965, of $2,235.93 and of $3,159.90 in two described accounts of Investors Syndicate of America, Inc., together with an undivided one-half interest in and to all dividends and accruals thereon; and further judgment in her favor against the defendant in the sum of $23,166.94, with 5% per annum interest thereon from November 6, 1966, until paid, and for all costs of this suit. From the judgment thus rendered and signed, defendant prosecutes a devolutive appeal.
Plaintiff-appellee, by answer to defendant's appeal, prays for judgment in her favor against the defendant for the additional sum of $13,692.88, with 5% per annum interest on all awards in her favor from March 7, 1966, the date of the dissolution of the community estate, until paid, and for damages for a frivolous appeal by the defendant under the provisions of LSA-C. C.P. Art. 2164. In her answer to the appeal, plaintiff-appellee further alleges that since the perfecting of this appeal, she has learned for the first time that defendant-appellant is a participant in the Investors Diversified Services, Inc.'s Career Distributors Retirement Plan, to which there accrued credits and benefits to the defendant of approximately $9,000.00; that this community asset was not inventoried nor was its existence disclosed by the defendant upon trial of the accounting; and that her rights to assert her claims with reference thereto should be reserved unto her.
The record establishes that plaintiff and defendant were married on October 22, 1942, in the State of Texas. They moved to Louisiana in 1953 and established their residence in Caddo Parish where they continued to live together as man and wife until their separation on May 5, 1965. An action for a separation a mensa et thoro was instituted by the wife against the husband on October 4, 1965. A reconventional demand for a judgment of separation in his behalf was filed by the defendant on March 7, 1966, and it was on his behalf that a judgment predicated upon his reconventional demand for a decree of separation was rendered and signed on April 29, 1966.
No appeal was taken from the aforesaid judgment of separation. In due course the judgment became final. The legal *833 effect was that the community of acquets and gains formerly existing between the husband and the wife was dissolved as of the date of the filing of the reconventional demand upon which the judgment was based, that is, on March 7, 1966. See Sciambra v. Sciambra, 153 So.2d 441, 443 (La.App., 4th Cir., 1963writs denied, 244 La. 900, 154 So.2d 768 [1963]).
In commenting on a situation in the Sciambra case, similar to the one existing here, our brethren of the Fourth Circuit, through Judge Yarrut, as the author of the opinion, pointed out:
"Since the wife's suit was dismissed, the date of the filing of her suit is of no importance and considered as never filed. However, the date of filing of the husband's reconventional demand, resulting in judgment in his favor, became the date of suit.
. . . . . .
"The case of Gastauer v. Gastauer, 143 La. 749, 79 So. 326, holds that a suit for separation or divorce, which has been dismissed, is considered as not having been filed.
"The case of Ohanna v. Ohanna, La. App., 129 So.2d 249, is merely confirmatory of LSA-C.C. Art. 150 that the husband cannot contract a debt binding the community during the pendency of the suit, and has no application to a debt contracted by the husband before the filing of his successful suit."
Thereafter, under date of December 8, 1967, a judgment was rendered and signed as prayed for ordering a partition of the community estate formerly existing between plaintiff and defendant, partially by licitation and partially in kind, as recommended by the notary taking the inventory. Rights were reserved to both parties to cause to be subsequently partitioned any property excluded from or not included in the inventory, and to urge all appropriate claims predicated thereon.
Under the demand for an accounting, defendant did not "account" in his responsive pleadings. Therefore, on September 22, 1970, plaintiff, by motion, sought to compel defendant to "account" and, in the alternative, prayed for a summary judgment. On January 6, 1971, defendant was further ordered to account for checks and sums of money named in the petition for accounting and received by him during the year of 1963 and subsequently thereto. An accounting was rendered by the defendant on January 22, 1971. After a hearing and trial, there was judgment in favor of plaintiff and against the defendant as hereinabove set forth.
The record in this case is comprised of 480 pages of testimony, together with numerous boxes of exhibits. The issues are factual in character. We find that our learned brother below was ingenuous in the development of the pertinent facts. Therefore, we adopt as our own the major part of his reasons for judgment:
"The pleadings on file and the evidence has convinced me that the serious marital discord did not begin until sometime in 1963. For this reason, Mr. Hodson was compelled to account for sums of money received by him from 1963 and subsequently thereto. Since Mr. Hodson had the burden of proof in this matter any sums received by him and not properly explained created a liability for said amount. Previous to 1963 the burden of proof rested with Mrs. Hodson as to the specific items mentioned in her petition in accordance with the last paragraph of Civil Code Article 2404. See Broyles v. Broyles, [La.App.] 215 So.2d 526, at p. 529; Oliphint v. Oliphint [219 La. 781] 54 So.2d 18, at p. 24; 25 L.L.R. 518.
"On the trial of the accounting and opposition to the inventory the Court learned that the 1966 ledger of Myrl Jamison Hodson which showed his ledger book of stock transactions for that year had been destroyed since it was last produced in Court. The explanation was *834 that Mr. Hodson's present wife accidently destroyed it since it had been stored in the attic. In addition, Mr. Hodson transferred immovable property to a third person in order to keep from having to account for the same to his wife; however, he re-transferred it back on advice of counsel. These facts compel the Court to accept only that portion of Mr. Hodson's accounting for the period subsequent to January 1, 1963, that can be substantiated by independent means.
"On March 15, 1965, Mr. Hodson drew out $12,548.20 from his stock account and cashed the check at the First National Bank of Shreveport. In addition, on the same date, he sold stock in his account with Merrill Lynch, Pierce, Fenner & Smith for $10,520.80. Of these amounts only $6,000.00 can be traced or established as properly accounted for, leaving $17,069.00 unaccounted for. Of this amount Mrs. Hodson would be due a credit of $8,534.50.
"On May 3, 1965, he drew $5,997.16 from three investment accounts, part of which was $1,647.37 from an account that has been established to be the separate property of Mrs. Hodson. This $5,997.16 is unaccounted for, and Mrs. Hodson would be due a credit of $3,822.37.
"On March 15, 1965, plaintiff sold 100 shares of stock and netted $260.29. Mrs. Hodson is due one-half thereof in the amount of $130.15.
"Plaintiff's Exhibit No. 27 reveals checks received in 1963, 1964, 1965 and 1966 as not having been deposited or accounted for by Mr. Hodson. These checks amount to a total of $10,782.35, and Mrs. Hodson is due credit for one-half thereof in the amount of $4,319.92.
"Plaintiff's Exhibit No. 18 reveals a $720.00 payment from Mrs. Winter in the year 1966 which has not been accounted for and Mrs. Hodson is due a credit of one-half thereof, or $360.00.
"The separate accounts of Mrs. Hodson are due reimbursement for $1,750.00 which was taken on January 25, 1965, and $1,000.00 which was taken on July 26, 1963.
"On September 10, 1963, $500.00 was received by Mr. Hodson yet not deposited in the bank or elsewhere, for which Mrs. Hodson is due reimbursement of one-half thereof, or $250.00.
"Mrs. Hodson is also due credit for the remaining net values as of October 4, 1965, of $1,029.91 in Acct. No. 20-26466, the entire amount of which has been shown to be her separate property; one-half of $2,235.93 from Acct. No. XX-XXXXXX, or $1,117.97; one-half of $3,159.90 from Acct. No. XX-XXXXXX, or $1,579.95, from which will be deducted the amount of $1,029.91 from Acct. No. 20-26466 since the entire amount has not been withdrawn by her.
"In March of 1959, Mr. Hodson received a check from one of the investment accounts and endorsed it to his father, E. L. Hodson. The evidence has convinced me that Mrs. Hodson has shown this to be a part of community funds and she is entitled to credit for one-half thereof, or $1,500.00.
"In January, 1951, Mr. Hodson loaned $3,000.00 to his father, Mr. E. L. Hodson, which has not been repaid and Mrs. Hodson is due credit for one-half thereof, or $1,500.00.
"According to my calculations the total additional credit due Mrs. Hodson on the community property settlement is the sum of $25,864.86, and there will be judgment in favor of Mrs. Hodson, and against Mr. Hodson, amending the inventory of this community to reflect said credit. There will be further judgment ordering the Notary Public to proceed with the partition in accordance with the revised inventory. It is further decreed that Mr. and Mrs. Hodson are ordered to complete the terms of the partial partition *835 agreement which was executed on February 21, 1968.
Subsequently, a motion for a new trial was filed and tried. Thereafter, the court's opinion was amended:
"The motion for a new trial limited to reargument has been argued by counsel, the contention being made by counsel for Mrs. Hodson that the form of the judgment previously rendered was erroneous because to merely allow Mrs. Hodson a credit was not proper as the credit due Mrs. Hodson far exceeded the value of the assets of the community. For this reason he contends that Mrs. Hodson is entitled to a personal judgment for the value of her credits in excess of the value of her one-half interest in the community assets remaining.
"This Court is of the opinion that the above contentions are correct. The motion for a new trial limited to reargument is granted, and, the argument having been had, it is the judgment of this Court that the original opinion is changed to reflect that as Jane Darling Hodson is due a credit of $25,864.86, and that as each is entitled to an undivided one-half of the community property, she is recognized as owner of an undivided one-half interest in and to the remaining net value as of October 4, 1965, of $2,235.93 in Account No. XX-XXXXXX and $3,159.90 in Account No. XX-XXXXXX (said undivided one-half thereof amounting to a total of $2,697.92), together with an undivided one-half interest in and to all dividends and accruals thereon; and there is further judgment in favor of Jane Darling Hodson and against Myrl Jamison Hodson in the sum of $23,166.94 with 5% interest thereon from November 6, 1966, and all costs of this suit."
The obligation of the husband to account to the wife upon dissolution of the marriage or on termination of the community of acquets and gains is based primarily upon the fiduciary relationship existing between them under LSA-C.C. Art. 2404 which, in pertinent part, provides:
"The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife."
The principles of law relating to mandates are also applicable to situations such as that before us in the present litigation. LSA-C.C. Art. 3004 recites, with reference to a mandatary's duty:
"He is obliged to render an account of his management, unless this obligation has been expressly dispensed with in his favor."
In an action against a fiduciary for an accounting, the burden is upon the principal to show that the fiduciary received the funds or property and the amount or quality thereof, and thereafter the burden is upon the fiduciary to establish what disposition he has made of the money or property. Bauer v. Alders, 187 La. 496, 175 So. 39 (1937); Rose v. Shaw, 144 La. 571, 80 So. 727 (1918); Laporte v. Laporte, 109 La. 958, 34 So. 38 (1903); Cresent River Port Pilots' Association v. Heuer, 193 So.2d 276 (La.App., 4th Cir., 1966), and the authorities therein cited; Justin v. Delta Motor Line, 43 So.2d 53 (La.App., Orl., 1949); City of Gretna v. Gosserand, 191 So. 750 (La.App., Orl., 1939writs denied, 1940).
Civil law principles regulating the principal fiduciary relationship are applicable to the same fiduciary relationship which the husband, as head and master of the community, bears toward his wife. This relationship and the duty arising therefrom were elaborately discussed and concisely stated by the Supreme Court in Pitre v. Pitre, 247 La. 594, 172 So.2d 693, 694-695 (1965):
"In this state the husband is the head and master of the partnership or community *836 of gains; he administers its effect and even disposes of the revenues which they produce, and may even alienate them, without the consent and permission of the wife. La.Civ.Code Art. 2404. At the dissolution of the marriage the effects which compose the partnership or community of gains are divided into two equal parts between the husband and the wife. Art. 2406. Moreover, equality is the base of all partitions. Art. 1398.
"It is to be especially noted, as we have said, that the parties to the partition here were husband and wife and not strangers to each other dealing at arm's length; and for this reason this partition is to be governed by rules different from those applicable to ordinary partitions. This difference stems from the provisions of our law set out above, that the property belonging to the community is under the supervision and control of the husband, who administers its effects without the consent and permission of the wife.
"The existence of this difference in the rules applicable to husband-wife partitions was recognized in the cases of Lee v. Lee, 214 La. 434, 38 So.2d 66, and Luquette v. Floyd (La.App.), 147 So.2d 894. In setting aside the partition in the Lee case this court, after finding that the husband was actively guilty of concealing community property from the wife at the time the settlement of the community was made, stated:
"`This contention might merit our serious consideration if the parties to the contract were strangers to each other, but, since they are husband and wife, and since the husband by virtue of his superior position may compel his wife to settle the community for less than her share, this court will scrutinize such contract with the utmost care in order to ascertain whether he has coerced his wife by any circumstances into signing an unfair settlement agreement.'
"In Luquette v. Floyd, supra, the Court of Appeal said:
"`* * * The property was under his supervision and control, and with these advantages it was relatively easy for him to conceal community assets from plaintiff. Under the circumstances presented here, we think the defendant was under a duty to disclose to plaintiff the fact that the community owned the tracts of land which had been fraudulently conveyed by him, and also to disclose the fact that the community was then the actual owner of the tracts of land affected by the two unrecorded deeds from Stelly. In our opinion, the failure of defendant to disclose these facts to plaintiff at the time the community property settlement was negotiated and entered into constitutes a fraudulent concealment or misrepresentation of material facts upon which plaintiff had a right to rely and upon which she did rely. * * *'

"Since under the Louisiana community property system the husband during the marriage has the management and control of the community property, one-half of which belongs to the wife, he as the `managing partner' is in a position to know relevant facts concerning this property which his wife does not know. Thus when the marriage is dissolved and the community property is to be partitioned, he stands in a fiduciary relationship toward his wife and owes to her the duty of full disclosure of the community property and its value, and must not conceal or misrepresent any material fact upon which she has a right to rely and upon which she might rely.
"The fiduciary relationship between the husband and the wife, which imposes upon the husband the duty not to conceal or misrepresent any material fact and to make full disclosure of all the community property and its value, has been recognized by courts of the states having community property systems similar to *837 ours, and these courts have set aside partitions of community property where the wife did not receive her fair share and the husband breached his fiduciary duty." (Emphasis supplied.)
See: Vai v. Bank of America National Trust and Savings Ass'n, 56 Cal.2d 329, 15 Cal.Rptr. 71, 364 P.2d 247; Beals v. Ares, 25 N.M. 459, 185 P. 780; Linton v. Linton, 78 Idaho 355, 303 P.2d 905; Brownson v. New, (Tex.Civ.App.), 259 S.W.2d 277; Brasier v. Brasier, 200 Okl. 689, 200 P.2d 427; Key v. Key, (Okl.), 388 P.2d 505; United States Nat. Bank of Denver v. Bartges, 122 Colo. 546, 224 P.2d 658.
At this point, it appears appropriate to stress that this record abounds with evidence of fraudalteration of records, tearing or removing of sheets therefrom, and eventually the destruction of one of the record books, fraudulent transfers of property, and manipulation of accounts. While the trial judge limited defendant's obligation to account for the year 1963 and subsequently thereto, we are unable to discover any authority for such limitation based merely upon intervening time.
In Oliphint v. Oliphint, 219 La. 781, 54 So.2d 18 (1951), the record disclosed that the parties were married in 1925. An action by the wife for an accounting was filed on May 2, 1944. It was alleged that beginning in September of 1940 and continuing through June of 1946, the defendant followed a course of drawing funds from the community aggregating $22,000. A fraudulent donation in 1937 was alleged as was a withdrawal of $5,000 from the bank the day before suit was filed and a donation made of stock to a daughter of a prior marriage, all for the purpose of placing assets out of reach of the wife. The defendant was ordered to account for all of these transactions, beginning in 1937 and continuing until the date suit was filed.
In Smith v. Smith, 117 So.2d 670 (La. App., 2d Cir., 1960), a period of accounting was recognized to cover the period of the marriage, that is, from April 3, 1953, until the divorce on September 27, 1957. See, also, Ohanna v. Ohanna, 129 So.2d 249 (La.App., 4th Cir., 1961cert. denied), supra.
The rule thus appears to be that a husband stands in a fiduciary relationship to his wife and is bound to disclose to her all of the community property belonging to them and its evaluation. Pitre v. Pitre, supra; Gay v. Martinolich, 271 So.2d 689 (La.App., 1st Cir., 1972); Troxler v. Troxler, 255 So.2d 240 (La.App., 1st Cir., 1971). The basic reason for this duty is based upon the husband's superior position with respect to the management and the disposition of the community assets during the marriage, as provided by LSA-C.C. Art. 2404.
The aforesaid principles are not only particularly applicable to the items of the accounts upon which plaintiff was granted recovery but are also applicable to plaintiff's claim for the further sum of $13,692.88, which obviously was not considered by the court. This claim is described and itemized as follows:
(1) $2,500.00 being one-half (½) of $5,000.00 withdrawn by defendant from Account 085 on December 7, 1959 (check is P-44), and not accounted for.
(2) $1,461.54 withdrawn from Fund Account No. 037 on July 8, 1957 (check is P-40), being one-half (½) of $2,923.09 and not accounted for.
(3) $9,731.34 being plaintiff's one-half (½) of the unaccounted portion of a loan of $9,556.38 by defendant on July 14, 1958, from Account No. 023 and of $7,493.79 from Account No. 023 on July 24, 1958 (check is P-42), and from Merrill Lynch, Pierce, Fenner & Smith stock sales of July 7, 1958 (100 shares at 109 [$10,900.00], and 100 shares at 151/8 ($1,512.50). Defendant accounted *838 for only $10,000.00 by investment in Account No. 085 on August 15, 1958 (P-33), being total loans of $29,462.67, less $10,000.00 accounted for, or $19,462.67 unaccounted for.
Defendant apparently made no effort to account for the aforesaid items. His failure in this respect, we take it, was due to the court's order which, for all intents and purposes, relieved him from accounting inasmuch as these items predated the period for which defendant was directed by the court's ruling to account. As a prerequisite to a decree with reference to these accounts, defendant should be accorded an opportunity to be heard and to account for them.
Plaintiff's rights to assert these additional claims anew, as well as her demands with reference to a claim based on defendant's participation in the Investors Diversified Services, Inc.'s Career Distributors Retirement Plan in the approximate sum of $9,000, should be specially reserved to her, and the right of the defendant to account therefor specially reserved to him.
Interest on the amount awarded in an accounting is due from the date of the dissolution of the community.
All debts bear interest at the legal rate from the time they are due, unless otherwise stipulated. LSA-C.C. Art. 1938. Settlement of a community estate is due, demandable, and payable as of the date of the community's dissolution. Culpepper v. Slater, 131 So.2d 76, 81 (La.App., 2d Cir., 1961).
For comparable accountings, see Midstates Oil Corp. v. Waller, 5 Cir., 207 F.2d 127, 131 (1953), and the Louisiana authorities therein cited.
With respect to appellee's answer demanding damages for defendant's alleged frivolous appeal, it may be pointed out that, though appellant nowhere assails the correctness of any of the many items approved by the court in fixing the award of recovery by plaintiff, there is no showing that the appeal was taken solely to delay or hamper plaintiff in her effort to realize on the judgment in her favor. The appeal being only devolutive could serve no purpose to delay enforcement of the judgment. Damages for frivolous appeals are not allowable unless it is obvious that an appeal is taken solely for delay or that counsel is not sincere in his view of the facts as he appreciates them or of the law he advocates, even though the court finds that such view is not meritorious. LSA-C.C. P. Art. 2164; Parker v. Interstate Life & Accident Insurance Co., 248 La. 449, 179 So.2d 634 (1965); Ratliff v. Roy, 260 So. 2d 171 (La.App., 2d Cir., 1972); Champagne v. Ackal, 256 So.2d 483 (La.App., 3d Cir., 1972); Succession of Kern, 252 So.2d 507 (La.App., 4th Cir., 1971writs refused, 259 La. 1050, 254 So.2d 462 [1971]).
Very appropriate to the situation here is the observation of the Supreme Court, through Justice McCaleb, later Chief Justice, as the author of the opinion in Parker v. Interstate Life & Accident Insurance Co., 248 La. 449, 179 So.2d 634, 636 (1965), in which it was stated:
"Article 2164 of the Code of Civil Procedure provides that damages may be awarded for frivolous appeal. But, as stated in Lanza Enterprises, Inc. v. Continental Insurance Co., La.App., Third Circuit (cert. denied), 129 So.2d 91, the language of the Article does not have the effect of changing the prior jurisprudence to the effect that damages for frivolous appeal are not allowable unless it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious."
See, also, the authorities cited therein.
For the reasons hereinabove assigned, it is ordered, adjudged, and decreed that the judgment appealed be, and the same is *839 hereby, amended to show that the principal of the judgment bears interest from March 7, 1966.
It is further ordered, adjudged, and decreed that plaintiff's rights to assert anew in the present proceeding, or in a separate action, under appropriate pleadings, her aforesaid claims for which defendant was not required to account, and her claim predicated upon defendant's alleged participation in Investors Diversified Services, Inc.'s Career Distributors Retirement Plan, as well as defendant's right to defend or "account," be, and they are hereby, respectively, specially reserved.
As thus amended, the judgment appealed is affirmed at defendant-appellant's costs.
Amended and affirmed.