STOULIG, Judge
(dissenting).
I respectfully dissent.
Appellant, Charles Bowers, Jr., through his own negligence, inattention and/or possible design, permitted a default judgment to be confirmed against him by failing to respond to a petition personally served on him. That pleading claimed appellant was solidarily liable for a $16,000 plus indebted *829 ness, but the promissory note upon which the claim was based reflected Bowers was jointly liable only for his pro rata of one-sixth of the obligation. However, the original plaintiff, Johnson, obtained a judgment against appellant as a solidary obligor on May 18, 1972. Had Bowers answered, obviously he could have limited his liability, but he failed to do so.
It is germane to inquire into Bowers motivation in sleeping on his rights because the majority of this court has now afforded him relief on. equitable principles.[1] Among the conditions imposed upon the litigant seeking equitable relief are that he “come with clean hands” [2] and “be willing to do equity.” [3]
In oral argument, appellee’s counsel stated that he had attempted to amicably negotiate with the defendant and his attorney before filing the suit on the note. He was unsuccessful because the defendant and his attorney were content to rely on the fact that this maker was judgment proof.
These statements were not refuted by appellant’s counsel who allegedly was a party to the pre-suit negotiations and they are indirectly corroborated by the fact that the defendant was recognized as an heir of his deceased father in a subsequently instituted succession proceeding. While it is not ascertainable from the record precisely what time period elapsed between the Johnson suit (CDC No. 531-859) and the filing of the succession (CDC No. 540-133) under which Bowers inherited real estate, it must have been considerable, because some 9,000 suits were filed in the interim.
In any event, Bowers first manifested an interest in obtaining justice after a judgment debtor rule compelled him to come to court on May 25, 1973 to answer questions about his assets.
Apparently prompted by his newly acquired solvency, Bowers filed a “Motion to Annul and in the Alternative Modify Judgment” on June 6, 1973. His basis for nullity is the default judgment was rendered contrary to principles of procedural and substantive law and his alternative plea is grounded on a claim his liability is limited to one-sixth of the original demand.
The judgment of the trial court sustaining the exception of no cause of action should be sustained because Bowers failed to set forth any of the exclusive causes for nullifying a judgment. (C.C.P. arts. 2002 and 2004) The merits of the deficiencies alleged should not be considered. When Bowers was personally served with the original petition, he had an opportunity to present substantive defenses. Because he took no action, judgment was rendered against him and once the delays for .appealing expired, the judgment became final.
To reverse the trial court the majority, ex gratia, supplied the plea of ill practice and incorrectly applied that line of jurisprudence permitting relief under C.C.P. art. 2004 even though there is no actual fraud or intentional wrongdoing. The ra *830 tionale therefor was succinctly stated in St. Mary v. St. Mary :[4]
“ * * * [T]he fraud which may justify annulling a judgment under LSA-CCP Art. 2004 is not only conduct which is fraudulent in the strict sense of the term. ‘The article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment, of some legal right, and where the enforcement of the judgment would be unconscientious and inequitable.’ Tapp v. Guaranty Finance Co., La.App. 1 Cir., 158 So.2d 228, 233, certiorari denied, 245 La. 640, 160 So.2d 228.
“Official Revision Comment b. to LSA-CCP Art. 2004 expressly states the desire to retain the judicial discretion obtaining under the former jurisprudence ‘to afford relief against judgments irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be un-conscientious and inequitable.’ See, e. g., Succession of Gilmore, 157 La. 130, 102 So. 94 (1924), Tapp v. Guaranty Finance Co. (1962), cited above, and Sturgis v. Gulfco Finance Co. [147 So.2d 782] (1962), cited above, for discussion of jurisprudence upon which this principle is based.”
The redactors under official Comment b of C.C.P. art. 2004 also affirmed' the line of jurisprudence stating courts do not sanction negligence and laches. Thus before a nullity action should be "sustained for ill practice, even where there is inattention and negligence, two elements should concur: (1) some circumstance (either contrived or accidental) deprived the party cast in judgment of an opportunity to present a defense; and (2) enforcement of the judgment would be unconscionable and inequitable. The fact the judgment is unconscionable is not in itself sufficient to constitute an ill practice. The majority reasoning carried to its ultimate conclusion would prohibit enforcement of any final judgment as being unconscionable against any litigant who had a valid defense which was not asserted because of his own inaction or because of incompetent counsel. Enforcement of any judgment rendered under such circumstances is to some extent unconscionable.
In Howard Construction Company v. Huval, 243 So.2d 925 (La.App.3d Cir. 1970), the court refused to nullify a judgment obtained against a garnishee who failed to answer interrogatories and was subsequently cast in judgment when he did appear for a rule to show cause why he should not be cast. In the nullity action, the garnishee pointed out a deficiency in the pleading patent on its face — the amount of the debt was not disclosed in the interrogatories as required by law. The court pointed out the omission was an error, not a nullity. Once the time for appeal expired, the judgment became final.
Louisiana courts have refused to annul final judgments even though based on obvious errors of law [5] or obtained by default against a defendant who could have urged, but failed to plead, an .affirmative defense.[6] However, judgment grounded on an absolute nullity ab initio has been set aside under C.C.P. art. 2004.[7]
I agree with the result obtained in the cases cited in the majority footnoted material. I note the factual situations in all reflect that some misrepresentation was *831 made to obtain the judgment nullified[8] or certain circumstances concurred accidently to prevent the party cast from asserting legal defenses prior to judgment.[9] Since these are distinguishable from the case before us, they are inapposite.
Even were I to agree there was an ill practice, appellant should not be allowed to invoke equity because of his pre-solvency conduct.
Finally, the majority has deprived appel-lee of more than $3,000 that is patently obviously due by nullifying the entire judgment.

.The Gilmore court, admittedly acting as a court of equity, noted:
“It is true that said petition does not charge ‘fraud’ or the ill practices specifically enumerated in the article of the Code of Practice above cited. The remedy given by said article to annul judgments, however, is not restrictive. The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable. Our courts will follow the general principles of equity jurisprudence applied by the equity courts of the other states of this country in actions of this character. Lazarus v. McGuirk, 42 La.Ann. 194, 8 So. 253; City of New Orleans v. Le Bourgeois, 50 La. Ann. 591, 23 So. 542.” 102 So. at 95.

. Crescent River Port Pilots’ Association v. Heuer, 193 So.2d 276 (La.App. 4th Cir. 1966).

. Bridges v. Trevino, 64 So.2d 528 (La.App. 1st Cir. 1953) ; City of New Orleans v. Levy, 233 La. 844, 98 So.2d 210 (1957).

. 175 So.2d 898, 896 (La.App.3d Cir. 1965).

. Succession of Quaglino, 248 So.2d 380 (La. App.4th Cir. 1971).

. Investment Contracts, Inc. v. Jones, 230 So. 2d 262 (La.App.1st Cir. 1969).

. Tapp v. Guaranty Finance Company, 158 So.2d 228 (La.App.1st Cir. 1963).

. Succession of Gilmore, supra (attorney concealed will) ; Muller v. Michel Lecler, Inc., supra (plaintiff obtained judgment for unpaid wages on perjured testimony.) Leidig v. Leidig, supra (husband knew wife’s address when suit was filed but alleged he did not and had curator appointed).

. City of New Orleans v. Le Bourgeois, supra.