565 So.2d 997 (1990)
Edna Shorter TERRY
v.
Curtis David TERRY.
No. CA 89 0798.
Court of Appeal of Louisiana, First Circuit.
June 26, 1990.
*998 Kenneth A. Goodwin, New Orleans, for plaintiff, appellant.
Henry R. Liles, Lake Charles, for defendant, appellant.
Before EDWARDS, LANIER and FOIL, JJ.
EDWARDS, Judge.
Plaintiff, Edna S. Terry, and defendant, Curtis David Terry, have both appealed from a judgment of partition of community *999 property. Mr. Terry asserts that the trial court erred, as follows:
1. By classifying a 1977 overriding royalty as a community asset;
2. By rescinding a pension granted to Mr. Terry by a community corporation, Three S & T Oil Company, Inc.;
3. By failing to find that Mrs. Terry had mismanaged a community corporation, Spanish Trail Arms, Inc.; and
4. By rejecting the claims for reimbursement for separate funds expended for the preservation and maintenance of the houseboat, Miss M, a community asset.
Mrs. Terry assigns the following two errors:
1. The trial court erred in classifying Mrs. Terry's individual retirement account as a community asset; and
2. The trial court erred by assigning a value of $77,000 to a promissory note executed by Spanish Trail Arms, Inc., to Three S & T Oil Company, Inc.

OVERRIDING ROYALTY
The parties do not dispute that the overriding royalty (ORR) was acquired in 1977 during the marriage. However, Mr. Terry alleges that the ORR was granted to him as compensation by Goldking Production Company in return for consulting services. Mr. Terry argues that, after the termination of the community in 1980, all payments from the ORR became his separate property. The trial court classified the ORR as a community asset.
An "Assignment of Oil and Gas Leases and a Bill of Sale" from Three S & T Company, Inc. (3S & T) to Goldking Properties Company (Goldking) was signed on February 23, 1977. On the same day, Goldking executed an assignment of the ORR to Curtis David Terry. The assignment of the ORR recited that it was made for $10 and other consideration. The receipt and sufficiency of the consideration was acknowledged in the instrument. Both the assignment of the leases and of the ORR were effective February 1, 1977. The ORR was for 12½% of 8/8 of all of the production covered by the oil and gas leases. By an agreement dated February 1, 1977, Curtis Terry was to provide consulting services on the assigned leases to Goldking Production Company (Production).[1] By the terms of the agreement, the services were to be provided at no charge to Production or any other satellite company. The services were not on a regular basis. Mr. Terry was called when needed.
Mr. Henry Speyrer, a former senior vice-president with Production, testified by deposition. Mr. Speyrer stated that the contract was with Mr. Terry, personally, because only he had the necessary knowledge to provide the consultation services Production needed in managing the leases. Mr. Speyrer testified that the leases were assigned to Johnson Oil and Gas Corporation in 1984.
Malcolm Johnson of Johnson Oil and Gas Corporation (Johnson Oil) also testified by deposition. At the time the leases were assigned to Johnson Oil, Mr. Johnson was aware that the lease was burdened with the ORR. If Mr. Johnson had not wanted to honor the ORR, Mr. Johnson testified that he had the option of not entering into the assignment.
On September 10, 1984, Johnson Oil executed an agreement with Mr. Terry to provide consulting services with virtually the same wording as the agreement with Production. The services were to be provided for the remainder of the original agreement with Production and at no cost to Johnson Oil. Neither consulting agreement contained any language relating to or referring to the ORR.
Property acquired during the existence of the community is presumed to be community. LSA-C.C. arts. 2338 and 2340. The classification of the property is fixed at the time of the acquisition. Cooper v. Heirs of Cooper, 421 So.2d 314, 317 (La. App. 1st Cir.1982). Either spouse may rebut *1000 the presumption. LSA-C.C. art. 2340. The party asserting the separate nature of the property has the burden of overcoming the strong presumption in favor of the community. The proof must be strict, clear, positive, and legally certain. Succession of Lindsey, 477 So.2d 148, 153 (La. App. 1st Cir.1985).
A mineral right is an incorporeal immovable. It is alienable and heritable. LSA-R.S. 31:18. The basic mineral rights are the mineral servitude, the mineral royalty, and the mineral lease. These mineral rights are classified as real rights. LSA-R.S. 31:16. Overriding royalties are, therefore, classified as real rights and incorporeal immovables. See Duncan v. Paragon Resources, Inc., 417 So.2d 850, 854 (La. App. 3d Cir.), cert. denied, 421 So.2d 908 (La.1982); Robichaux v. Pool, 209 So.2d 77, 79 (La.App. 1st Cir.1968).
The overriding royalty was acquired during the marriage. The obligation of Mr. Terry to provide the personal consulting services will lapse if he is not in good health or at his death, but the overriding royalty will continue. It is also heritable. See LSA-R.S. 31:18. The assignment of the overriding royalty provides that the consideration was received and was sufficient. Neither the assignment of the leases nor the assignment of the ORR refers to the requirement for consulting services. The consulting agreement does not contain any language that provides that the ORR serves as the compensation for the consulting services.
In Mr. Speyrer's and Mr. Johnson's opinion, the ORR was paid as compensation for the consulting services. This is not supported by the documentary evidence or by the nature of an ORR.
Great deference is given to the trier of facts and findings when the findings are based on determinations regarding the credibility of the witnesses. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). A reasonable factfinder could have rejected the testimony of Mr. Terry, Mr. Speyrer, and Mr. Johnson.
The defendant failed to meet his burden of overcoming the strong presumption in favor of the designation of property acquired during the marriage as community. The trial court did not err in classifying the ORR as community property.

PENSION
Mr. Terry argues that the creation of a pension plan funded by an undisputed community corporation, 3S & T, from its assets, was a legitimate and valid act of the board of directors. Mrs. Terry claims that the plan substantially and wrongfully depleted the assets of the corporation and was done for that reason. The great majority of the stock of 3S & T is owned by Mr. and Mrs. Terry. The trial court agreed with Mrs. Terry's claims and rescinded the plan.
The defendant, Mr. Terry, was enjoined from selling, alienating, mortgaging, encumbering, injuring, and disposing of any of the community property by an order signed on August 3, 1979. Mr. and Mrs. Terry later agreed to liquidate 3S & T. On June 16, 1986, the parties agreed to modify the previously issued injunction and restraining order prohibiting alienation or transfer of community assets to allow the liquidation of the community corporation.
The court ordered that, upon the surrender of the community stock of 3S & T to the corporation, all of the assets of the corporation would be distributed to Mr. Terry and immediately transferred to two trustees "to hold in trust until the parties voluntarily or judicially divide such assets." Mr. Terry was the appointed liquidator and was aware of these plans. At no time, during the negotiations, did Mr. Terry tell Mrs. Terry, her representative, or the appointed trustees that the Board of 3S & T had voted to establish a pension plan by depositing $155,477.43, approximately one-half of the assets of the corporation, into a pension fund account, thereby removing that amount from the funds to be held in trust for eventual distribution. The pension plan was to pay out to Mr. Terry $1,200.00 per month for 25 years. Although Mrs. Terry was a shareholder, she was not an officer or member of the Board.
*1001 In October and November of 1985, the Board of Directors of 3S & T discussed and voted for a pension plan to Mr. Terry. The Board meetings, at which the pension plan was discussed, were held after the decision to liquidate the corporation. The Board met again on June 13, 1986, shortly before the assets were to be transferred to the trustees, and resolved to fund the plan by taking and escrowing the necessary funds from the corporate assets. On June 16, 1986, Mr. Terry signed documents purporting to transfer all of the assets of 3S & T to the co-trustees. Mrs. Terry's representative subsequently discovered the attempt to fund the pension plan. Her attorney objected to the transfer.
Officers, directors, and liquidators have a fiduciary relationship with the corporation and its shareholders. Levy v. Billeaud, 443 So.2d 539, 543 (La.1983). A fiduciary's dealings with the corporation and shareholders are subjected to rigorous scrutiny and if challenged, the officer, director, or liquidator must prove the good faith of the transaction and its inherent fairness from the viewpoint of the corporation and its shareholders. Levy, 443 So.2d at 543; Noe v. Roussel, 310 So.2d 806, 816-18 (La.1975).
Until the community property is partitioned, there also exists a fiduciary relationship between the former spouses. A former spouse having control and possession of any community asset owes a fiduciary duty to the spouse not in control. Queenan v. Queenan, 492 So.2d 902, 912 (La.App. 3d Cir.) cert. denied, 496 So.2d 1045 (La.1986); Hodson v. Hodson, 292 So.2d 831, 835 (La.App. 2d Cir.), application denied, 295 So.2d 177 (La.1974), citing LSA-C.C. art. 3004 on mandates and art. 2404. LSA-C.C. art. 2404 has now been replaced by LSA-C.C. arts. 2346-50 and art. 2354. See also LSA-C.C. art. 2369.
The trial court found that Mr. Terry was the driving force behind 3S & T and its Board of Directors. The trial court opined that the act of establishing the pension was suspicious under the circumstances and was, in reality, an effort to deplete the community corporation of some of its assets in derogation of Mrs. Terry's rights. The amount needed to establish the pension, $155,477.43, was a substantial part of the corporation's assets. This money was a lump sum to be taken from the corporation's assets and paid into the pension fund, even though Mr. Terry had agreed on plans of liquidation and distribution that did not even hint at such a large transfer.
The pension fund created by a lump sum distribution would pay Mr. Terry over the next 25 years. This is different from the case where deferred compensation or pension benefits are paid into a pension plan over a period of years during and after a marriage. The move to fund the plan on a date in such close proximity to the date of the transfer to the trustees adds weight to Mrs. Terry's claim. It is likely that any shareholder and spouse with an interest in a community corporation, without knowledge of a transfer of a substantial amount of the corporate assets before an agreed-upon liquidation and distribution plan, would challenge the act based on a lack of inherent fairness and a breach of fiduciary duty. Mr. Terry was the appointed liquidator and a director. Mrs. Terry was not. The control of the community corporate assets rested in the husband, Mr. Terry. The burden was on Mr. Terry to show the good faith nature of the transaction and that he had not breached his fiduciary duty. See Hodson, 292 So.2d at 835-37; Noe, 310 So.2d at 818-19.
After a thorough review, we find that the record does not support Mr. Terry's argument that the pension plan was a reasonable, fair, and valid act of an independent board of directors. We agree with the trial court that the pension plan was created under suspicious circumstances and probably meant to deplete the community corporation of substantial assets. Mr. Terry did not meet his burden of showing that the transaction was fair to Mrs. Terry or in good faith and not a breach of Mr. Terry's fiduciary duty.

MISMANAGEMENT OF SPANISH TRAIL
Mr. Terry argues that the loss of value of the community corporation, Spanish *1002 Trail Arms, Inc. (Spanish Trail), was due to Mrs. Terry's mismanagement. Mrs. Terry, who was a shareholder and the manager of Spanish Trail, replies that there was no evidence of mismanagement and that the business's decline was caused by other factors. The trial court rejected the claim of mismanagement.
The record does not support a finding of mismanagement. There was evidence that showed that the economy had taken a downward turn in the area and that Mrs. Terry had been seriously ill for a period of time.
Mr. Terry agreed to the liquidation of Spanish Trail, but the liquidation sale was not as successful as the parties had hoped. The record does not contain sufficient evidence to show that the sale's small returns were the result of Mrs. Terry's mismanagement. Mrs. Terry testified that she had chosen the company which handled the liquidation sale on the recommendation of area business people and that she was also disappointed in the liquidation company's handling of the sale and the profits from the sale. The record does support a finding that Mrs. Terry's decisions as manager of a community corporation were made in good faith and not a breach of the fiduciary duty she owed to Mr. Terry.
We cannot, after a review of the record, say that the trial court was clearly wrong or that it erred in its finding of no mismanagement.

HOUSEBOAT
The trial court rejected Mr. Terry's claims for reimbursement of his separate funds used to maintain the houseboat, Miss M, which was a community asset. Mr. Terry alleges there was evidence to support his claims. Mrs. Terry argues that the evidence was insufficient to support any claims of specific amounts of reimbursement.
The record does not contain cancelled checks or documentary proof to support all of the amounts claimed by Mr. Terry. The trial court apparently found the testimony presented on the claims and the documentary evidence that was submitted to support some of the claims insufficient. The record does contain cancelled checks from Mr. Terry to Bayou Jack Marina, where the boat had been moored since 1984. However, the denial of the claims for reimbursement, under the circumstances present here, is understandable. Mr. Terry's contributions to maintenance are offset by other factors which negate the need for reimbursement.
Mrs. Terry had an appraisal of the boat done in 1981 that valued the boat at $32,500.00. Later in 1981, Mr. Terry moved the houseboat from its previous mooring to Bayou Jack Marina, but did not notify Mrs. Terry until sometime in 1984. In 1986, an appraisal of the boat placed the value between $3,000.00 and $6,000.00. The trial court accepted the $3,000.00 valuation. Mrs. Terry testified that Mr. Terry had asked her to pay for one-half of the repairs to the boat, but he had never sent any invoices or estimates of the cost to repair the boat. She felt uncomfortable paying an amount based only on Mr. Terry's opinion of what it would cost to fix the boat.
Considering the circumstances, we cannot say that the trial court was clearly wrong in rejecting the reimbursement claims of Mr. Terry. Mrs. Terry was unaware of the whereabouts of the boat for sometime and, by 1986, the boat had substantially deteriorated in value.

IRA
Mrs. Terry assigns error to the trial court's classification of her IRA, begun after the termination of the community, as a community asset. She argues that after termination of the community, the payments made to her IRA account by Spanish Trail were income to her and, therefore, her separate property. Mr. Terry alleges that the IRA was an unauthorized expenditure of assets from the community corporation, Spanish Trail. According to Mr. Terry and at a time when Spanish Trail was economically unstable, Mrs. Terry was making the unauthorized contributions to her IRA directly out of the corporate assets of Spanish Trail.
*1003 Mrs. Terry was a shareholder, manager, and officer of Spanish Trail. She earned $250.00 a week before 1982 which was raised to $400.00 per week after 1982 or 1983. Spanish Trail also contributed to some of Mrs. Terry's business expenses, such as medical insurance and gasoline. Spanish Trail also paid $2,000.00 per year into an IRA account for Mrs. Terry. There was no evidence of a board of directors or stockholders meeting authorizing this IRA account or stating that the contribution was meant to be deferred compensation to the manager, Mrs. Terry. Neither did Mrs. Terry submit evidence to support the fairness of the transaction at a time when the company had declining profits and assets.
Mrs. Terry, a controlling shareholder in Spanish Trail, owed a fiduciary duty to Mr. Terry in her decisions concerning the distribution of corporate assets. Queenan, 492 So.2d 912; Hodson, 292 So.2d at 835. The situation here is distinguished from one in which the employee is not a shareholder, director, or officer in a closely held corporation or one in which the employee is awarded a benefit based on the actions of an independent authorized supervisor, officer, or board of directors. The trial court could have found that the transaction was an unauthorized distribution of corporate assets, rather than deferred compensation.
The trial court did not provide specific reasons for its decision on the IRA. However, based on the record, we cannot say that the trial court was clearly wrong or committed manifest error in its classification of the money in the IRA as a community asset.

PROMISSORY NOTE
Mrs. Terry disputes the value of $77,000.00 assigned to a promissory note by the trial court in the distribution of assets and liabilities. She admits that the note was made by Spanish Trail in favor of 3S & T. Spanish Trail no longer has the assets to pay off the note and Mrs. Terry feels the amount of the note should be reduced.
There was testimony that the note was for $77,000.00. In fact, Mrs. Terry does not dispute the existence of the note for $77,000.00. The liquidation of Spanish Trail and lack of assets to pay back the note is not determinative of the agreed-upon debt it represents. We find no merit in this assignment of error.
For the above reasons, we affirm the judgment of the trial court. The costs of the appeal are assessed equally between the parties.
AFFIRMED.
LANIER, J., concurs in the result.
NOTES
[1] Goldking and Production are related companies. Goldking held the leases and granted the ORR. Production was the operating company and the entity that contracted with Mr. Terry for consulting services.