CUTRER, Judge.
This appeal arises out of a suit by a geologist seeking to be declared the owner of an overriding royalty interest in four leases owned by his former employer, Paragon Resources, Inc.
John C. Duncan (Duncan) brought suit against Paragon Resources, Inc. (Paragon) seeking to be declared the owner of an overriding royalty interest in four specific leases owned by Paragon in Beauregard Parish, Louisiana. The suit seeks the specific performance of an alleged contract between the parties. Alternatively, Duncan seeks such royalty interest, or money for an amount equivalent thereto, for the alleged breach of a contract and, a further alternative, recognition of the right to such interest by means of quantum meruit.
The trial court rendered judgment dismissing Duncan’s suit. Duncan appeals. We affirm.
Duncan was employed as a geologist by Paragon on January 1, 1976 at an annual salary of $40,000.00. He was assigned to Paragon’s Lafayette office. Among the duties assigned to Duncan was to seek prospects for the purpose of drilling for oil production. Duncan, in cooperation with members of the land department, would examine oil prospects that would come to their attention. Duncan would study the prospect from the geological standpoint and make a recommendation as to whether oil production would be possible if such prospect was drilled. After such prospects were located and studied, the recommendation would be submitted to Paragon. The executives of Paragon would examine the prospect and its geology. After such examination, Paragon made the final decision as to whether the prospect should be drilled. Duncan had further duties of selling interests to investors to raise money for drilling purposes. Paragon would also capitalize the wells by “farm outs” to another company and retain a participating interest in each well. Paragon usually ended up with twenty-five percent interest in the well.
In August 1976, Duncan and Paragon entered into a written employee incentive agreement whereby Duncan would have an option to purchase up to twenty percent of Paragon’s interest in prospects submitted by him. Under the terms of this agreement, if Duncan elected to financially participate in the drilling of the prospect, he would obligate himself to pay his proportionate share of the costs of drilling, testing, completing and operating the well or wells that were drilled on the prospect. Also, the instrument provided that if Paragon purchased royalties, Duncan could participate in these purchases up to the same extent as in the acquisition of leases (twenty percent) by paying his pro rata share of the costs of acquisition. This agreement included prospects that may be found in an *852 area covering approximately the South half of the State of Louisiana including Beauregard Parish, where the leases in question are located.
The 1976 agreement contained a termination provision which stated as follows:

“This agreement shall be effective as of January 1, 1976, and, unless terminated or modified by agreement of the parties thereto, shall continue in effect only during the period of Duncan’s employment by PRI.”

In 1978, Paragon’s business was not progressing as expected by the executives. It was decided to hire a new executive officer in order to enhance the success of Paragon. John Fox was hired in 1978. He was a man of much background in this sort of endeav- or. He was made president of Paragon and Mr. Templeton, the prior president, assumed the position of chairman of the board of directors.
Fox, in order to get the company moving, decided to make a substantial change in the method of operation. Paragon, in 1978, embarked upon a plan to sell public drilling funds through Merrill-Lynch in order to finance drilling operations. To accomplish this public drilling funds method of capitalization, it took about one year of processing. The registration of the public stock intention was to be filed and approved by the Securities and Exchange Commission. Various requirements had to be met. By the time all the requirements were met one year had expired. Paragon actually sold the public stock program in July 1979 for $10,000,000.00. Under this plan, Duncan would no longer be required to locate investors to assist in financing the drilling of the prospects.
Soon after Fox took office with Paragon, he examined the 1976 incentive agreement that Paragon had with Duncan. He concluded that the agreement was incompatible with the new Merrill-Lynch financing plan. Duncan had an option to purchase twenty percent or less in prospects. Since it was discretionary whether Duncan would exercise his option and also discretionary as to what extent he may wish to participate, up to the maximum of twenty percent, this agreement was not specific enough to satisfy the requirements of the Merrill-Lynch program. Duncan understood and admitted this in his testimony.
On October 19, 1978, Fox and Duncan met and, after a discussion, the 1976 agreement was terminated. The termination agreement provided as follows:

October 19,1978

Thursday

Memorandum of Agreement

Paragon Resources, Inc. has a present incentive agreement with J. C. Duncan, an employee, dated August 25, 1976 and amended March 31,1978. Paragon and Duncan are desirous of terminating the agreement, as amended as to ail past, present and future prospects except:

(1) Cottonwood Field Prospect (1)

Liberty Co., Texas

In & about Block 17, T & N O R R C 0.

Survey (A-370)

(2) Gordon Prospect (1)

Beauregard Parish, Louisiana (Goidking No. 1 Owens-Illinois Well)

It is hereby mutually agreed, except for the aforementioned Prospects, the aforementioned agreement is hereby terminated for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged.

PARAGON RESOURCES, INC. S/JC Duncan B7: s/JohnJ.FoK_
J. C. Duncan John J• Fox- P™dent”
At the same time another instrument was executed which provided as follows:

October 19,1978

Thursday

Memorandum of Agreement

Paragon Resources, Inc. is in the process of initiating an incentive program for its key officers and employees in its Division offices and its home office.

J. C. Duncan, South Louisiana Division Manager, has an existing incentive agreement with Paragon which, with the exception of two prospects, is being terminated coincident with the execution of this memorandum. The planned incentive program, to be reduced to writing in the near future, will contain provisions, among others, that will define the South Louisiana Division Area as shown on attached Exhibit “A” in order that there will be an understanding of the prospects in

*853
which J. C. Duncan and other participating Division employees

will have an economic interest after Paragon's payout.

PARAGON RESOURCES, INC.

s/JC Duncan By- s/John J- Fox

J C Duncan John J- Pox, President ”
Duncan was given an annual salary raise of $5,000.00 at the time these two instruments were signed.
The “planned incentive program” referred to above had not been prepared and submitted to the participating divisional employees by the time of Duncan’s resignation on July 31, 1979.
Fox testified that he and Templeton had decided to terminate the 1976 agreement with Duncan and to work up a planned employee incentive program that would include divisional key employees. Fox, an attorney, intended to prepare the plan himself. However, due to the increase of business matters as a result of the transition to the Merrill-Lynch plan, the increase in drilling operations in 1979 as a result of $10,-000,000.00 being made available under the new program[2] and a serious illness that was incurred by Fox, he was delayed in preparing and submitting the program as had been planned. This plan was finally prepared and presented to the key employees in early 1981.
In January 1979 (prior to Duncan’s resignation), C. R. Naylor prepared a drilling prospect, including the geology, other needed information and an initial lease of 169 acres of land. This prospect was called the Northwest Singer Prospect located in Beauregard Parish. Naylor presented this prospect to Duncan who recommended same to Paragon. It was understood between all parties, Naylor, Duncan and Paragon, that, for this prospect to be large enough an area to justify a drilling operation, more acreage must be acquired. The total proposed concept for this prospect was approximately 1,200 acres. The adjoining property was owned by Rice-Land Lumber Company and, at the time the prospect was submitted to Paragon, the needed property was leased to another company. The Northwest Singer prospect was purchased by Paragon from Naylor on January 12, 1979, for $30,000.00 plus an overriding interest for Naylor. Paragon purchased the prospect knowing that it would have to acquire the Rice-Land Lumber leases before the prospect could be drilled.
Duncan resigned from his employment with Paragon on July 31, 1979.
After expiration of the outstanding leases on the adjoining property (July 31,1979), Paragon began negotiations with Rice-Land for the lease of approximately 900 acres adjoining the 169 acre lease originally submitted by Naylor. Paragon was able to obtain the leases of the adjoining 900 acres in August and September 1979. The drill site was located on this acreage. Paragon drilled a well on this acreage which “spud-ded-in” in January 1980 and was completed as a producer in March 1980.
This suit by Duncan was then filed on July 8, 1980. Duncan seeks to be declared the owner of an overriding interest of two percent of the production from the Northwest Singer Prospect subject to payout provisions.
The substantial issues on appeal are as follows:
(1) Whether the trial court erred in its ruling that parol evidence was not admissible to prove Duncan’s right to a two percent overriding royalty interest in the Northwest Singer Prospect;
(2) Whether the trial court erred in not, alternatively, reinstating and enforcing the 1976 agreement; and
(3) Whether the trial court erred in not awarding an overriding interest in the prospect on the basis of a breach of the October 1978 contract or by way of quantum meruit.
PAROL EVIDENCE TO PROVE DUNCAN’S RIGHT TO AN OVERRIDING ROYALTY INTEREST
At the trial of this matter, counsel for Duncan offered parol evidence to prove the essential elements of the proposed incentive program which were discussed by *854 Duncan and Fox at the time the October 1978 instrument was executed. This parol evidence was objected to and admitted subject to the objection. In his reasons for judgment the trial judge held that this pa-rol evidence was not admissible to prove Duncan’s entitlement to an overriding royalty. On appeal, counsel for Duncan argues that such parol evidence is admissible to clarify the intent of the parties and the uncertainty and ambiguity existing in the October 19, 1978 agreement. The trial judge reasons fully and correctly answer these arguments and we adopt those reasons as our own as follows:
“(1) The parol evidence offered by plaintiff and objected to by defendant was not admissible in support of plaintiff’s demand to be recognized as the owner of an overriding royalty interest. An overriding royalty interest is a mineral right, and, as such, it is classified as a real right and an incorporeal immovable. Under our law every transfer of an immovable must be in writing and title cannot be established by parol evidence. These rules are succinctly set forth in Robichaux v. Pool, 209 So.2d 77 (La.App. 1st Cir. 1968), where the court said:

‘Overriding royalty interests are classified as real rights and incorporeal immovable property. This law is substantive as well as procedural and the owners thereof shall have the benefit of all laws relating to the owners of real rights in immovable property. LSA-R.S. 9:1105. It is well settled that title to overriding royalty interests may not be proved by parol evidence. LSA-C.C. 2275 and 2462. See Wier v. Glassell, 216 La. 828, 44 So.2d 882; Acadian Production Corp. v. Tennant, 222 La. 653, 63 So.2d 343; Little v. Haik, 246 La. 121, 163 So.2d 558; Hayes v. Muller, 245 La. 356, 158 So.2d 191, Article 2275 has been rigidly enforced against all persons seeking to establish an interest in immovable property by parol evidence. Little v. Haik, supra.’

While that case predates the adoption of Louisiana Mineral Code and the repeal of R.S. 9:1105, the principles set forth are still applicable. See Articles 16 and 18 of the Mineral Code.

[3]

“Where there is a written document between the parties concerning immovable property, but the description or identity of the property involved is defective or ambiguous, parol evidence may be allowed to establish a description, provided ‘there is sufficient body in the description to leave the title substantially resting on writing, and not essentially on parol .. .’ See Kernan v. Baham, 45 La.Ann. 799, 13 So. 155 (1893) and Lemoine v. Lacour, 213 La. 109, 34 So.2d 392 (1948). Thus, in some cases a party claiming title to an immovable may be allowed to ‘eke out’ title by parol. But this is only where the description rests substantially on the written document and not on oral supplementary testimony.

“Here the memorandum of agreement (P-4), dated October 19, 1978, concerning the planned incentive agreement for Mr. Duncan and other key employees of Paragon, is not, on its face, a writing sufficient to transfer to plaintiff an overriding royalty interest in the specific leases in question and it does not have sufficient specificity to justify or permit the use of parol evidence to establish such an interest in specific leases and properties.

“The instrument in question is extremely vague and non-specific. While it refers to a ‘planned incentive program, to 
*855
be reduced to writing in the near future’ and mentions that Mr. Duncan and other employees ‘will have an economic interest after Paragon’s payout’ in ‘prospects’ in the South Louisiana Division Area, there is nothing in the instrument to indicate the nature of the economic interest, the size of such interest, when such interest would be earned, or what is meant by the terms ‘prospect’ and ‘payout’. The instrument evidences an agreement that there was to be an employee incentive program in the future, but it does not purport, even by implication, to give Mr. Duncan presently or prospectively, an overriding royalty interest in any leases held by Paragon. Thus there simply is not sufficient substance to the writing to allow plaintiff to eke out title to an overriding royalty by parol evidence.

“The issue in Robichaux v. Pool, supra, was very similar to the one under consideration here and there, with written agreements between the parties that were much more explicit and detailed than the instrument in this case, the court held that the plaintiff was not entitled to use parol evidence to prove title to an overriding royalty interest. It further held that such evidence was not admissible to modify a written instrument pertaining to such interest. That case fully supports the decision reached here that parol evidence was inadmissible to establish plaintiff’s claim.

“The recent case of Sloane v. Davis [397 So.2d 1376], No. 8079 in the Court of Appeal, Third Circuit, decided April 15, 1981, while involving a claim by a geologist-employee for assignment to him of certain overriding royalty payments from a particular mineral prospect, is of no real help in resolving the issues in this case. There the court recognized that under certain circumstances parol evidence is admissible to clarify ambiguities in a written contract and to show the intentions of the parties. That is a well recognized exception to the parol evidence rule, but it is not applicable here because Mr. Duncan offered the parol evidence to establish title, or an agreement for title, to an incorporeal immovable where the underlying written document is totally inadequate to support the use of parol. The most that can be said about the written instrument of October 19, 1978, is that it was an agreement between Mr. Duncan and Paragon that in ‘the near future’ an incentive program, then in the process of being initiated by Paragon, would be reduced to writing and the terms spelled out. But it is very clear from that document that there is no agreement as to when the incentive program would be reduced to writing or what its terms and conditions would be.”

THE 1976 AGREEMENT
Counsel for Duncan next contends, alternatively, that in the event Duncan’s interest is not recognized under the October 1978 agreement, then his interest should be recognized under the 1976 incentive contract. This argument is without merit.
This original employee incentive agreement went into effect on January 1, 1976, and would remain in effect during Duncan’s employment. Thus, the agreement could be terminated (except for interests that had become vested) in either of the following ways: (1) by mutual consent of the parties; (2) resignation of Duncan; or (3) discharge of Duncan by Paragon. In this instance, it was terminated by method (1), consent of the parties. This termination was entered into voluntarily by Duncan. He understood the reason for Fox’s request for termination and also that if he did not agree to the termination, such termination would be accomplished by his discharge (method # 3). When Duncan agreed to the termination, he retained his job and obtained an increase in salary. As stated by the trial court in its reasons for judgment, “The truth is that the old plan was going to be cancelled, one way or the other, regardless of whether a new incentive program was put into effect.” It cannot be said that the failure of Paragon and Duncan to consummate a new incentive program would have the effect of reviving the terminated 1976 incentive program. The trial court correctly resolved this issue.
*856 BREACH OF OCTOBER 19, 1978 AGREEMENT OR QUANTUM MERUIT
Duncan contends that when Paragon did not reduce the new incentive program to writing and submit same by the time of his resignation, the October 1978 agreement was breached and Duncan suffered damages, the measure of which is an overriding interest in the prospect at issue. As a further alternative, Duncan contends that he is entitled to an overriding royalty interest, or a money judgment equivalent thereto, on the basis of quantum meruit. These arguments lack merit.
We have ruled heretofore, by adopting the trial judge’s reasons, that an overriding royalty interest is a real right and can only be transferred in writing. Such a right may not be acquired by parol evidence. For Duncan to obtain his overriding interest on the basis of the breach of the October 1978 agreement would be allowing him to accomplish, indirectly, what he cannot do directly; i.e., the establishing of an overriding interest by parol evidence.
Also, we have noted that when the 1976 agreement was terminated by agreement, such termination was final except as to interests that had previously vested. The termination agreement was not conditioned upon the execution of a new incentive program. The October 1978 instrument in question only expressed the intention of Paragon to submit a new written incentive program. After the termination of the 1976 agreement on October 19, 1978, Duncan was working and performing his duties for an annual salary of $45,000.00 but without the benefits of any incentive agreement. Duncan resigned his job on July 31, 1979, before any such agreement was reduced to writing and accepted by him. Under these circumstances, Duncan did not acquire any vested rights in any mineral interests by any breach of contract in prospects presented by him to Paragon after October 19, 1978, up until his resignation on July 31, 1979.
As to quantum meruit, after October 1978, until his resignation in July 1979, Duncan was performing his duties as an employed geologist for which he was paid a substantial salary. There is no proof that he performed any services, in regard to the prospects in question, beyond those that he was obligated to perform as an employed geologist. Duncan would not be entitled to an overriding interest on the basis of quantum meruit.
In summary, Duncan has established no legal basis upon which he may be entitled to a right to an overriding royalty interest in the Northwest Singer Project owned by Paragon.
For these reasons, the judgment of the trial court is affirmed. Duncan, plaintiff-appellant, is to pay all costs of this appeal.
AFFIRMED.

. Sixty-Five wells were drilled by Paragon in 1979.

. LSA-R.S. 31:16 provides:
“The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. This enumeration does not exclude the creation of other mineral rights by a landowner. Mineral rights are real rights and are subject either to the prescription of nonuse for ten years or to special rules of law governing the term of their existence.” (Emphasis ours.)
LSA-R.S. 31:18 provides:
“A mineral right is an incorporeal immovable. It is alienable and heritable. Tire situs of a mineral right is the parish or parishes m which the land burdened is located. All sales, contracts, and judgments affecting mineral rights are subject to the laws of registry.”

. At Duncan’s suggestion, the 1976 agreement remained effective as to these two prospects. These two prospects are not at issue in the case at hand.