492 So.2d 902 (1986)
Penny M. QUEENAN, Plaintiff-Appellee,
v.
Michael R. QUEENAN, Defendant-Appellant.
No. 85-16.
Court of Appeal of Louisiana, Third Circuit.
August 6, 1986.
Rehearing Denied August 29, 1986.
Writ Denied November 14, 1986.
*904 McClain, Morgan & Savoy, R. Scott McClain, Lake Charles, for defendant-appellant.
Maurice L. Tynes, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, J., BABINEAUX[*] and TEEKELL[*], JJ. Pro Tem.
TEEKELL, Judge Pro Tem.
These proceedings stem from the community property regime which formerly existed between Michael R. Queenan and Penny M. Queenan (who later married Horace L. Dickens, Jr.). The parties were divorced by judgment of date February 20, 1980, and the community property regime was terminated as of November 13, 1979, at which time the community regime consisted of various movable property including furniture, fixtures and personal items, along with four parcels of real estate and almost total ownership in three separate corporations, to wit: Mike Queenan Equipment Co., Inc., Queenan Development Co., Inc., and Oak Meadow Water Works. All of the shares of stock of the three corporations were owned by the community except one or two shares owned by the parties' two eldest sons.
Mike Queenan Equipment Co., Inc. was a corporation formed several years prior to the termination of the community property regime and was engaged solely in the rental of industrial construction equipment with operators, primarily cherry pickers, draglines, and mid-sized cranes.
Queenan Development Co., Inc. was formed about two years prior to the termination of the community to develop a subdivision, and Oak Meadow Water Works was formed to provide water to the subdivisions.
After the final divorce was granted Mike Queenan filed a petition for a partition of the community. Penny Queenan then filed a petition for an accounting and a partition under Revised Statutes 9:2801, seeking an allocation of assets and liabilities.
A trial to allocate the community property was held on February 1, 1982, except that the allocation of stock in the equipment company and the accounting between the parties was severed from the trial by *905 agreement of the parties and the court. After the trial, the matter was fixed for argument on June 16, 1982, at which time judgment was rendered, but a formal judgment was not signed by the court until October 16, 1982, from which judgment an appeal was filed by Mike Queenan but was subsequently dismissed by both parties. Although this matter is not at issue at this time, for purposes of clarity, it should be noted that in this allocation judgment of date November 16, 1982, Penny Queenan was awarded the two parcels of property from which the equipment company operated, including its office, maintenance and repair shop, and storage site.
The trial on the allocation of stock and the accounting between the parties was held on October 27, 1983. However, judgment thereon was not rendered until October 11, 1984, and formal judgment thereon was signed October 29, 1984. From this judgment, Mike Queenan has filed a timely appeal which is before us at this time.
The formal judgment of date October 29, 1984, reads in pertinent part as follows:
I. The rule to show cause why corporate stock should not be allocated, filed by PENNY M. QUEENAN, is hereby made absolute, and accordingly the shares of stock owned by PENNY M. QUEENAN in Mike Queenan Equipment Co., Inc. are allocated to MICHAEL R. QUEENAN and MICHAEL R. QUEENAN owes to PENNY M. QUEENAN an accounting for all community assets in his possession and/or control; and accordingly, MICHAEL R. QUEENAN is ordered to pay to PENNY M. QUEENAN the sum of $538.460.00, together with legal interest from date of judicial demand, until paid, as the price for the allocated shares, and the sum due from the accounting;
II. The rule to show cause why corporate stock should not be allocated, filed by MICHAEL R. QUEENAN, is hereby dismissed.
III. All costs herein are taxed to MICHAEL R. QUEENAN.
The judgment on its face appears simple enough, but the reasons therefor, the various and sundry factual situations, the appraisals of factual considerations, calculations and methodology applied in arriving at the dollar figure awarded are complex and involved.
A complete reproduction of the trial court's opinion of date October 11, 1984, is reproduced and made a part hereof by way of a footnote to this opinion.[1] *906 *907 *908 *909
*910 On appeal defendant-appellant makes 13 assignments of error.[2]
At a meeting of the stockholders on November 13, 1980, (one year after termination of the community) Penny Queenan voluntarily turned her stock in Queenan Development Co., Inc. over to Mike Queenan rather than personally endorse notes to Calcasieu Marine National Bank for the indebtedness and accruing interest of the corporation for which they were personally liable. At this meeting Penny Queenan was accompanied by her attorney. Subsequently, Mike Queenan Equipment Co., Inc. (under the auspices of Michael R. Queenan as president) loaned the development company $195,824.00 and then wrote the loan off as a bad debt.
Some time in May of 1980, Michael Queenan commenced purchasing somewhat heavier and larger equipment in his own name. In the latter part of 1981, Michael Queenan formed another corporation, Mike Queenan Rigging, Inc., and transferred all of the equipment that he had personally purchased into this new corporation.
The evidence reflects that after the termination of the marital regime on November 13, 1979, and before November 13, 1980, (the day which Penny transferred or voluntarily assigned her stock in Queenan *911 Development Co., Inc.) Michael R. Queenan had assumed personal obligations or personal responsibility for $85,059.57 of the indebtedness of that particular corporation.
There was also evidence to the effect that Mike Queenan Equipment Co., Inc. had not paid rentals due Penny Queenan in the sum of $14,400.00 on property allocated to her in the judgment of November 16, 1982. There was additional evidence leveled at Michael Queenan permitting Mike Queenan Rigging, Inc. to park equipment on one of the parcels previously allocated to Penny Queenan and leased by Mike Queenan Equipment Co., Inc. stretching over a period from March of 1981 through June of 1983. The evidence further reflects some question of lack of diligence on the part Michael Queenan in maintaining some rent houses on the property allocated to Penny Queenan prior to her obtaining possession thereof, for a period of three months. The record is replete with testimony regarding the financial status at varying times and circumstances of all of the legal entities connected with this case, including the manner of management of all of the assets emanating from the community regime.
The essential allegations of Penny Queenan are to the effect that Michael Queenan took advantage of his being in control and possession of the properties and assets of the community regime and exploited them to his own benefit, particularly relating to his utilization of properties allocated to Penny Queenan, excessive salaries and expenditures charged against the family owned corporation (Queenan Equipment Co., Inc.), unauthorized transfer or "loan" of funds from Queenan Equipment Co., Inc. to the development company, which he later wrote off as a bad debt, and especially that he bled the family owned corporation (Queenan Equipment Co., Inc.) to the benefit of Mike Queenan Rigging, Inc., a personal corporation organized by Michael Queenan after the termination of the marital regime.
As a consequence of the trial held on October 27, 1983, on the allocation of stock and the accounting between the parties (on which a decision of the court was rendered on October 11, 1984, and judgment thereon signed on October 29, 1984), the court held that Michael Queenan had breached the fiduciary obligations owed Penny Queenan as the spouse in control of the community assets under the partnership and corporate laws of the State of Louisiana. The effect of the court ruling, among other things, was to refuse to allow Michael Queenan credit for any sums paid by him on the corporate debts of Queenan Development Co., Inc. (for which the parties were personally obligated) from the time of the termination of the community regime until Penny Queenan relinquished her stock to Michael Queenan on November 13, 1980; fix the date of the first trial (on February 1, 1982) as the date that the claims of the parties should be adjudicated, and consequently refused to recognize Michael Queenan's claims for all sums spent on the properties allocated to him after that date; awarded Penny Queenan judgment in the sum of $14,400.00 against Michael Queenan personally for rentals due by Mike Queenan Equipment Co., Inc. to her on the two parcels of property allocated to Penny Queenan in the judgment of November 16, 1982; awarded Penny Queenan judgment in the sum of $16,200.00 against Michael Queenan personally because Michael Queenan had allowed Mike Queenan Rigging, Inc. to park its equipment on one of the parcels of property allocated to Penny Queenan, and which was being leased by Mike Queenan Equipment Co., Inc.; awarded Penny Queenan judgment in the amount of $7,500.00 because Michael Queenan did not diligently keep some rent houses rented for a period of three months on property previously allocated to Penny; awarded Penny Queenan 49.9 per cent of the book value Mike Queenan Equipment Co., Inc. as of February 1, 1982; awarded Penny Queenan one-half the amount of a bad debt resulting from the transfer of $195,824.00 from Mike Queenan Equipment Co., Inc. to Queenan Development Co., Inc., which was later written off as a bad debt; awarded Penny Queenan 49.9 per cent the book value *912 (as of February 1, 1982) of Mike Queenan Rigging Co., Inc., a corporation which had been formed by Mike Queenan approximately two years after the termination of the community property regime.
From this judgment Michael Queenan appeals and makes assignments of error heretofore indicated.
We have little difficulty in determining that following the judicial termination of a community regime and before a property settlement of the community assets has been consummated, a former spouse having control and possession of any assets belonging to the community regime would owe a fiduciary obligation to the former spouse who is not in control or possession.
Until there is a community property settlement, there exists a practical or empirical extention of the community regime insofar as the duties and obligations of the former spouses relate to each other in the management of the community assets. The parties are not only co-owners but are the beneficiaries as well as obligors of a technical or legal extention of the community regime until settlement thereof, thus acquiring a peculiar relationship as a specie of partners, co-owners, and as in the case sub judice co-owners of shares of stock and/or common owners of shares of stock in a family owned corporation or corporations. The relationship of spouses and former spouses (until there has been a property settlement following termination of the community regime) cuts through the entirety of the law, including the laws of partnership, property, and corporations.
The very fact that the law (Revised Statutes 9:2801) provides methods for accounting and adjudication of community property regimes indicates that the law contemplates that partners in a community property regime are not mere co-owners.
Thus, whether under the theory of laws of partnerships, co-ownership of property, corporate law, or under provisions of Revised Statutes 9:2801, and other applicable law, there is a fiduciary relationship existent until the properties and assets of a community regime have been divided and accounted for between the former spouses. See Revised Civil Code Article 2354, 2369, 2809; Revised Statutes 12:91; see also Hodson v. Hodson, 292 So.2d 831 (La.Appeal 1974), and cases cited therein, and Noe v. Roussel, 310 So.2d 806 (La.S.Ct.1975).
We find no problem in the lower court's failure to afford Michael Queenan credits for debts or obligations assumed by him on behalf of the community for Queenan Development Co., Inc. after termination of the community and before Penny Queenan divested herself of the corporate stock on November 13, 1980. It appears from the record that Penny Queenan was concerned about what was going on in connection with this corporation, along with all of the other community assets, and simply relinquished all of her shares of stock in this corporation to Michael Queenan, evidently with the understanding that he would take it from thereon. However, with respect to the subsequent transfer by Michael Queenan of the sum of $195,824.00 from the family owned corporation (Mike Queenan Equipment Co., Inc.) to the Queenan Development Co., Inc. (now solely owned by Michael Queenan) as a loan, and then later writing same off as a bad debt, we find this to be clearly a breach of fiduciary duty and obligation, for which an accounting must be rendered in the form of adding this figure back to the book value of Mike Queenan Equipment Co., Inc. for purposes of disposition which we will discuss later.
A review of the evidence does not indicate that the trial court abused the discretion ordinarily afforded the trier of facts in determining that Michael Queenan had harassed the tenants on the Prien Lake Road property allocated to Penny Queenan, in determining that he had failed to use diligence in renting the rent houses, and in awarding $7,500.00 to Penny Queenan for loss rentals on a basis of $2,500.00 per month.
Although we find no problem or error in the lower court's ruling in awarding Penny Queenan $14,400.00 as rentals due from Mike Queenan Equipment Co., Inc. on *913 the Country Club Road and Prien Lake Road properties previously allocated to Penny Queenan which were unpaid for the years ending June 1982 and 1983, we hold that this judgment should be against Mike Queenan personally, but conditioned upon this amount being classified as a debt or obligation of Mike Queenan Equipment Co., Inc. and being factored in on a determination of the book value of this corporation, the disposition of which will be discussed herein later.
The real bone of contention between the parties to this suit centers around the formation by Michael Queenan of a new corporation, namely Queenan Rigging Co., Inc., and whether or not he bled the family-owned corporation (Mike Queenan Equipment Co., Inc.) to the advantage of the newly formed corporation of Mike Queenan Rigging, Inc., in which Penny Queenan owned no interest.
Michael Queenan strenuously urged that he set up the second corporation for two basic reasons. Because of the union/labor situation in the construction industry in southwest Louisiana, it was common practice for corporations to have double-breasted operations. That is, they would have one corporation doing union work and another corporation for non-union work. Secondly, Mike Queenan Equipment Co., Inc. was not a construction company, but rather was an equipment rental company. Michael Queenan's position is that he decided to set up a construction company to perform turn-key jobs with super heavy equipment and leave the medium weight equipment for the old company.
Although there was considerable evidence pro and con on this issue, the record simply does not reflect sufficient evidence to support Michael Queenan's position on this point. We agree with the trial judge's finding that there was no need for Michael Queenan to form the second corporation, and apparently the primary purpose for doing same was to bleed the family-owned corporation for the benefit of the second corporation. The double-breasted approach to the union problem was not born out by the evidence. Furthermore, Michael Queenan operated both corporations out of the same office, from the same location, using the same brochures, and in general operated both corporations as if they were one and the same. If there had been a need for a second corporation as a technical proposition, then Michael Queenan could have incorporated the second corporation as a subsidiary of the family-owned corporation.
The proof of the pudding develops when a review of the record indicates that the second corporation flourished and prospered, while the family-owned corporation declined to a point of having a negative book value of $244,055.00 in October of 1983. The second corporation (Mike Queenan Rigging, Inc.) meanwhile had a positive book value of $412,385.64 at this time. We feel obliged, therefore, to treat the second corporation as if it were part and parcel of the community regime insofar as allocation and accounting purposes are concerned.
A problem now arises as to the effective date that an allocation or accounting should be made effective. That is, if an allocation and accounting is to be made in terms of the stock going to Michael Queenan and a dollar value thereof going to Penny Queenan for her share, what time or date should be designated for making the evaluation.
Louisiana Revised Statutes 9:2801(4)(a) provides as follows:
"The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties."
The question now is what is the effective "trial date." One trial was held on February 1, 1982. Oral arguments thereto were held and judgment was rendered on June 16, 1982. Although this trial was styled and referred to as a trial to allocate the community property, by agreement of the parties and the court the allocation of the stock in the equipment company and the accounting between the parties was severed from that trial, and was not tried until *914 October 27, 1983. A judgment on this trial was not rendered until October 11, 1984, and thereafter signed on October 29, 1984. Thus, we have the question of when was "trial on the merits"?
La.R.S. 9:2801(2) refers to a trial of the traverses, at which time the court shall determine the assets and liabilities of the community. This determination may be made at a summary proceeding or combined with the hearing for the determination of the valuation of assets, allocations, accounting, etc., which is accomplished by ordinary procedure at the trial on the merits in accordance with R.S. 9:2801(4)(a). The legislature in this statute envisions two possible trials here: the first being the preliminary trial of the traverses and the second later trial being the trial on the merits whereupon the assets will be valued, and allocated, accounting rendered, etc. It seems the legislature hereby intended the assets to be valued upon the occasion of the trial on the merits and it would follow at a time as close as possible to when those particular assets actually would be divided between the parties; ideally, this would help insure that each side would be getting a group of equally-valued assets at the time of the partition. If the assets are valued at a time well in advance of the actual partition, in the meantime some assets could depreciate and others could appreciate in value, and these fluctuations would not be accounted for in the final distribution.
The court is also obliged upon this occasion to "determine the liabilities, and adjudicate the claims of the parties."
The purpose of all of this is to provide an occasion for the court to get a handle on the situation. It does not mean that the court is frozen by any statutory time level or particular valuation at any particular time or for any particular purpose, but simply to place values on the assets for the purposes of accounting, allocation, and adjudication in accordance with the further provisions of R.S. 9:2801(4)(b, c, d and e).
It makes good sense from every standpoint that matters of this nature should be resolved as quickly as possible. This case presents a classic example of what can well happen when there is delay. For whatever reason or reasons there was a considerable lapse of time between the divorce (February 20, 1980) and the final decision rendered on October 11, 1984.
Looked at from every angle, we resolve that the community property was not ultimately allocated and an accounting consummated until the trial on October 27, 1983. However, the trial court is given broad discretion in settling and adjudicating upon the community regime. Thus, in the interest of equity and justice it would be within the discretion of the trial court to delineate any reasonable time or date for purposes of shearing off, or, for an effective date of a particular transaction, provided that the facts and circumstances of the particular case rendered such times or dates appropriate in order to effect a fair and equitable partition and division between the parties.
In this particular case, however, we believe that the trial court's selection of February 1, 1982, as the effective date of an absolute allocation and accounting, results in an inequitable settlement of the community regime between these two parties. The February, 1980, date would afford Penny Queenan the best of both worlds. Although we are not unmindful that the record reflects considerable excesses and failure of fiduciary duties and responsibilities by Michael Queenan, it must be recognized that he was the one working long hours and putting himself on the line by assuming personal responsibility for financial loans to facilitate the continued operation of these businesses, and in general making it all work. Michael Queenan did enjoy excessive salaries and other amenities at the expense of these businesses while Penny Queenan was not sharing in the same. However, during the same time Penny Queenan was not cohabitating with Michael Queenan nor was she sharing the responsibilities and burdens associated with the management and continued operation of these various businesses.
*915 Moreover, the Court must take into account that the economy in general and the construction business in particular has been severely hit in southwestern Louisiana along with other areas of the state. For many reasons, the majority of businesses, including Michael Queenan's operations, found themselves with excessive inventories and a marked decline in business activity.
A look at the book value of Mike Queenan Rigging, Inc., which we have found to have flourished at the expense of the family-owned corporation, even shows a decline in book value from $473,959.00 on May 31, 1982, to a book value of $412,385.64 on October 24, 1983.
A look at the book values of Mike Queenan Equipment Co., Inc. for 1978 thru October 24, 1983, reflects the following:

June 30, 1978 $214,160.00
June 30, 1979 $306,597.00
June 30, 1980 $561,395.00
June 30, 1981 $619,056.00
June 30, 1982 $376,571.00
June 30, 1983 ($140,273.00)
October 24, 1983 ($244,055.00)

We will therefore fix the effective date of the allocation and accounting (other than that accomplished as a result of the trial held on February 1, 1980) to be contemporaneous with the October 24, 1983, trial date, or at a time that the evidence will reflect a viable and workable figure determined as of a time as closely related thereto as reasonably appropriate.
Among the excesses in which Michael Queenan indulged was the exhorbitant salary he drew from Mike Queenan Equipment Co., Inc., while contemporaneously drawing some $5,000.00 per month as salary from Mike Queenan Rigging Co., Inc. since its inception in the latter part of 1981. This would total approximately $120,000.00 for the two year period preceeding the trial date of October 27, 1983. While equitable considerations render a dollar figure difficult to establish, we feel that a minimum of one half (½) of this $120,000.00 should be brought back into Mike Queenan Rigging Co., Inc. for accounting purposes. Thus, the book value of this latter corporation will be increased by $60,000.00 as of the trial date of October 27, 1983.
Therefore, with the allocation of the stock to Michael Queenan, Penny Queenan is entitled to 49.9 per cent of the book value of both the family-owned corporation (Mike Queenan Equipment Co., Inc.) and the second corporation (Mike Queenan Rigging, Inc.) to be fixed based upon what the record in evidence reflects to be the respective book values at dates nearest the trial date of October 27, 1983. Thus, we make the allocation relative to Mike Queenan Rigging, Inc. as of the book value reflected on October 24, 1983, to wit $412,385.64. To this should be added the $60,000.00 excess salary factor heretofore discussed, which would render a total book value of $472,385.64.
The book value of Mike Queenan Equipment Co., Inc. as of October 24, 1983, is shown to be a negative $244,055.00. To this must be factored in the debt and obligation of $14,400.00 owed by this corporation to Penny Queenan for unpaid rentals, previously indicated, which renders a total negative book value of $258,455.00. However, to this must be added the $195,824.00 loan from Mike Queenan Equipment co., Inc. to Mike Queenan Development Co., Inc., which would bring the net book value of this corporation to a negative $62,631.00. Thus, the two corporations combined have a total net book value of $409,754.64. Penny Queenan is entitled to a judgment for the dollar value of 49.9 per cent of this book value, which yields the figure of $204,467.56.[3]
*916 We find that the trial court erred in awarding Penny Queenan judgment in the amount of $16,200.00 against Michael Queenan personally for permitting Mike Queenan Rigging, Inc. to park its trucks and equipment on the Country Club property leased by Mike Queenan Equipment Co., Inc. from Penny Queenan, who had received this property by allocation as result of the February 1, 1980, trial. Although this is another example of Michael Queenan's bleeding the family-owned corporation in favor of his own corporation, Penny Queenan has been awarded judgment for any unpaid rentals due her in connection with the lease of this property; furthermore, if Michael Queenan had not permitted Queenan Rigging, Inc. to park its vehicles and equipment on that particular lot, the company would have had to pay presumably something close to $600.00 or more to someone else for an appropriate parking place during this period. Since the Court is awarding Penny Queenan ownership in virtually one half of the rigging company, she was receiving as much benefit from this practice as was Michael Queenan. Therefore, the award of the trial court of judgment in the amount of $16,200.00 in favor of Penny Queenan against Michael Queenan personally on this claim is reversed and set aside.
To the aforementioned awards in favor of Penny Queenan must be added the sum of $14,400.00 for unpaid rentals heretofore discussed, together with the sum of $41.26, which results from an accounting between the parties with respect to the management of the rental properties located on Prien Lake Road and on Country Club Road allocated to Penny Queenan at an earlier date.
Therefore, the decision of the trial judge is modified so that judgment is hereby rendered in favor of Penny Queenan (Dickens) against Michael R. Queenan in the total amount of $218,908.82, with legal interest thereon from October 27, 1983, until paid. Court costs, including the costs of this appeal, are assessed equally between the parties.
AFFIRMED IN PART; AMENDED IN PART AND RENDERED.
NOTES
[*] Judge Allen M. Babineaux of the Fifteenth Judicial District Court and Judge Lloyd G. Teekell of the Ninth Judicial District Court participated in this decison by appointment of the Louisiana Supreme Court as Judges Pro Tempore.
[1] M. QUEENAN
VS.
MICHAEL R. QUEENAN NO. 79-5778
14TH JUDICIAL DISTRICT COURT STATE OF LOUISIANA PARISH OF CALCASIEU
HAWSEY, Judge.
On July 7, 1979 Mike and Penny Queenan physically separated and Mike took up residence with a woman other than his wife. On February 20, 1980, Penny Queenan was granted an absolute divorce. Mike Queenan then filed a petition for a partition of the community. Penny Queenan then filed a petition for an accounting and a partition under R.S. 9:2801 seeking an allocation of assets and liabilities. A trial to allocate was held February 1, 1982; the matter was argued June 16, 1982 and judgment was signed November 16, 1982. The issue of the accounting was not heard with the partition-allocation by agreement of counsel and the Court.
The allocation judgment dated November 16, 1982 was appealed by Mike Queenan. In June of 1983 Mike Queenan dismissed his appeal and Penny Queenan gained title to the property allocated to her. However it was not until October of 1983 that Penny Queenan gained physical possession of the items and then as a result of eviction proceedings.
The partition by allocation did not include the shares of stock in Mike Queenan Equipment Co., Inc. since these were re-issued by Mike Queenan in the name of each spouse. Penny Queenan filed a rule directed to Mike Queenan to show cause why these shares should not also be allocated. At trial on October 27, 1983, Mike advised the Court that he did not oppose the allocation of the shares to him.
Penny Queenan has alleged that Mike Queenan had in his possession and control, as of the community termination, substantially all of the community assets, and the entirety of the income producing assets, including the family-owned corporation, Mike Queenan Equipment Co., Inc. Based on this, Penny Queenan has requested an accounting.
There are three primary areas of concern in the accounting: first, the rental collected from the Prien Lake Road and Country Club Road property, and their disbursement; second, the payment of community obligations such as bank notes, and other miscellaneous debts; and third, the management of the affairs of Mike Queenan Equipment Co., Inc., the family-owned corporation.
Penny Queenan's allegations can be simplified by saying Mike Queenan owes a fiduciary duty to her and he breached such duty. Authority for the fiduciary relationship is derived from the following:
Revised Civil Code Art. 2354: A spouse is liable for any loss or damage caused by fraud or bad faith in the management of the community property.
Revised Civil Code Art. 2369: A spouse owes an accounting to the other spouse for community property under his control at the termination of the community property regime. Comments, R.C.C. Art. 2369: (Excerpt) In contrast with Art. 2354, the obligation for accounting under Art. 2369 is not predicated upon a showing of fraud or bad faith in administering of the community. A spouse having control of community property at termination of the community property regime occupies the position of a co-owner under the general law of property. Thus, he ought to be accountable for any loss or deterioration of the things under his control attributed to his fault, and the fruits produced by the things, since termination of the community regime. Article 2369 thus reiterates a rule that governs relations between co-owners.
The general property law includes as to co-owners the law of partnership.
Revised Civil Code Art. 2809: A partner owes a fiduciary duty to the partnership and to his partners. He may not conduct any activity, for himself or on behalf of a third person, that is contrary to his fiduciary duty and is prejudicial to the partnership. If he does so, he must account to the partnership and to his partners for the resulting profits.
The general law of property includes as to co-owners the corporation law.
Revised Statute 12:91: Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.
Mike and Penny Queenan are co-owners as spouse, partners, and shareholders, leaving Mike owing Penny a fiduciary responsibility insofar as management of her (½) property is concerned. A breach of that duty has predictable consequences.
In Hodson vs. Hodson, 292 So.2d 831, La.App. 1974, the husband had engaged in alteration and destruction of his records, fraudulent transfers of property and manipulation of accounts, and was held to a strict duty to account. In fact, this duty of Mr. Hodson, and of the husbands in other cases cited in Hodson existed for the period during marriage as well as after community termination.
In an action against a fiduciary for an accounting, the burden is upon the principal to show that the fiduciary received the funds or property and the amount or quality thereof, and thereafter the burden is upon the fiduciary to establish what disposition he has made of the money or property. See Hodson, and numerous cases cited at p. 835 therein.
Mike Queenan has no apparent opposition to accounting for all assets under his management, with the exception of the corporation. In Noe vs. Roussel, 310 So.2d 806, 1975, the Supreme Court, at p. 818, 819, had this to say:
"We hold, therefore, that an agent who acquires his principal's property, or one who otherwise acts in a fiduciary capacity, bears the burden of establishing that the transaction was an arm's length affair. This means that the agent or fiduciary must handle the matter as though it were his own affair. It also means the agent or fiduciary may not take even the slightest advantage, but must zealously, diligently and honestly guard and champion the rights of his principal against all other presons whomsoever, and is bound not to act in antagonism, opposition or conflict with the interest of the principal to even the slightest extend. The reason for the rule is obvious."
The Noe case also places the burden of proof on the director to prove his good faith in entering into the transaction and also the inherent fairness from the viewpoint of the corporation.
Roussel upholds the specific standard of care of R.S. 12:91 under which an officer and director must discharge his duties, as one involving good faith, diligence, care, judgment, and skill which ordinarily prudent men would exercise under similar circumstances in like positions.
The first item to account for is the rental properties located on Prien Lake Road and on Country Club Road. The Court finds that Mike Queenan had control and possession of these properties until October 1983. He has introduced into evidence a list and summary of personal cash disbursements from November 13, 1979 to June 30, 1983. In her post-trial brief, Penny Queenan analyzes them as follows:

 " PERIOD COMMENT
November 13, 1979 to The disbursements shown balanced against the in
December 31, 1979 come show that $1,543.65 is owed to Mike by the
 community which equals $771.83 from Penny.
1980 Disbursements shown balanced against income show
 Mike spent $14,222.96 more than he took in. Included
 in this is $837.53 in loans to MWW which is a
 corporation owned by Mike, which should be deducted
 since it is not a community debt. This leaves
 $13,722.96 due Mike from the community, or
 $6,861.48 from Penny.
1981 The balance due Mike from the community of
 $15,285.58 shown on his exhibit should be reduced by
 $3,877.64 which were loans made by Mike to
 OMWW, a corporation and not a debt. This leaves
 $11,407.94, due Mike, or $5,703.97 due from Penny.
1982 The partition hearing took place on February 2, 1982,
 and according to R.S. 9:2801, values are calculated as
 of that date. The judgment partition made each
 party responsible for the mortgate debt from that
 point forward on the property each received. So, for
 1982, Mike's disbursements only on Penny's property
 and a receipt of her rental income are pertinent
 along with rental property expenses. Therefore,
 1982 accounting would go as follows:
 Loan payments: Country Club Road and
 Prien Lake Road $14,819.74
 Expenses : Country Club Road and
 Prien Lake Road 6,202.50
 __________
 21,022.24
 Less Rental Income 9,080.95
 __________
 Due Mike from Penny $11,941.29
1983 The same reasoning applies in 1983 as to which items
 are includible in the accounting, and taken month by
 month, as compiled by Mike, would go as follows:
January, 1983
 Loan payments: Country Club Road and
 Prien Lake Road $ 2,066.27
 Expenses : Country Club Road and
 Prien Lake Road 214.00
 __________
 $ 2,280.27
 Less Rental Income $ 1,505.00
 __________
 Due Mike from Penny $ 775.27
February
 Loan payments: Country Club Road and
 Prien Lake Road $ .00
 Expenses : Country Club Road and
 Prien Lake Road 353.50
 ___________
 $ 353.50
 Less Rental Income $ 645.00
 ____________
 Due Penny from Mike ($ 292.50)
March
 Loan payments: Country Club Road and
 Prien Lake Road $ .00
 Expenses : Country Club Road and
 Prien Lake Road 168.39
 ____________
 $ 168.39
 Less Rental Income $ 1,270.00
 ___________
 Due Penny from Mike ($ 1,101.61)
April
 Loan payments: Country Club Road and
 Prien Lake Road $ .00
 Expenses : Country Club Road and
 Prien Lake Road .00
 ___________
 $ .00
 Less Rental Income $ 910.00
 ____________
 Due Penny from Mike ($ 910.00)
May
 Loan payments: Country Club Road and
 Prien Lake Road $ .00
 Expenses : Country Club Road and
 Prien Lake Road 183.01
 ____________
 $ 183.01
 Less Rental Income $ 1,245.00
 ____________
 Due Penny from Mike ($ 1,061.99)
June
 Loan payments: Country Club Road and
 Prien Lake Road $ .00
 Expenses : Country Club Road and
 Prien Lake Road 91.05
 ____________
 $ 91.05
 Less Rental Income $ 830.00
 ____________
 Due Penny from Mike ($ 738.50)"

The above analysis from exhibits Mike-1 and Mike-5, can be recapped as follows:

 RECAP
PERIOD AMOUNT
Nov-Dec 1979 771.83 owed to Mike
1980 6,861.48 owed to Mike
1981 5,703.97 owed to Mike
1982 11,941.29 owed to Mike
Jan, 1983 775.27 owed to Mike
Feb, 1983 -291.50 owed to Penny
Mar, 1983 -1,101.61 owed to Penny
Apr, 1983 -910.00 owed to Penny
May, 1983 -1,061.99 owed to Penny
June, 1983 -830.00 owed to Penny
 __________
 $21,858.74 Subtotal owed to Mike

From the above subtotal of $21,858.74 must be deducted the sum of $14,400.00, as rentals due to Penny from Mike Queenan Equipment Co., Inc. on Country Club Road and Prien Lake Road, but unpaid for the years ended June, 1982 and 1983, at the rate of $600.00 per month, leaving a new subtotal of $7,458.74. This is based upon the financial statement of the corporation introduced as Exhibit Penny-9. Note C-Related Party Transactions plainly states no rental was paid, and none is shown to be paid under itemized annual General and Administrative Expenses shown on page 16. This information is compiled from the corporation books and records by the corporate CPA, Finley Hilliard, who saw no reason to question them. Thus, a new recap is:

 RECAP
 $21,858.74subtotal owed to Mike
- $14,400.00unpaid rental due Penny
____________
 $ 7,458.74new subtotal

Although this is technically a corporate rental debt, it is clear that Mike, who was in full control of the corporation, and the land, both as landlord and tenant, simply chose to prejudice Penny by not collecting rent. Naturally, he didn't inform Penny so she could act instead. The breach of fiduciary duty in this obvious conflict of interest is not only actionable but very reprehensible conduct. In fact, it led ultimately, to a foreclosure on the property by the bank. This last subtotal is not without additional question. Mike also chose not to use due diligence in renting the rent houses and maintaining the rent property, and in fact actively harassed the remaining tenants. Penny lost money of an undetermined, but substantial amount. Dickie Dickens testified as to these facts, and testified that all rent houses were rented as of October, 1983, merely 4 months after Penny was allowed to begin to take over. In other words, Mike failed prudently and diligently to manage and administer the rental units. Penny's loss as a result (approx. $2,500 per month) clearly exceeds the last subtotal which completely negates the entire amount due Mike from Penny. In addition, Mike clearly allowed the use of the premises at Prien Lake Road and Country Club Road by Mike Queenan Rigging, Inc. at no rental cost. Photos of the Country Club Road property show the DeMag crane and its components occupying over 10 flatbed trailers and other ground area. This crane was bought originally by Mike individually and then by the rigging corporation. The written lease, in evidence in the eviction proceedings (docket No. 83-5052), specifically prohibits any sublease by Mike Queenan Equipment Co., Inc. The rental value for this use by such other tenants is at least equal to the rental value of the actual business tenant, or $600.00 per month. This use has existed at least since the purchase date of the DeMag, shown by exhibits, as March, 1981. This totals $16,200.00, for lost rentals to June, 1983; a loss to Penny due to mismanagement and breach of fiduciary duty. A new recap would therefore be:

 RECAP
 $ 7,458.74 due Mike
Less - 7,500.00 3 months rent lost by
 __________
 Mike's inattention and
 harassment
 ($ 41.26) due Penny
Plus $16,200.00 27 months rent lost by
 Mike's violation of fiduciary
 duty
 __________
 $16,241.26 new subtotal due Penny

From the two aspects of the accounting first mentioned, after considering all relevant factors in law and fact bearing on the figures supplied by Mike, it must be concluded that Mike owes Penny at least $16,241.26. This does not include the corporation aspect."
This Court has carefully reviewed the analysis argued by Penny Queenan in her brief and finds it is correct. It is therefore adopted as a finding of the Court.
Mike Queenan has agreed to have the shares of stock in the family corporation, Mike Queenan Equipment Co., Inc. allocated to him. This means that Penny Queenan must be compensated for her 435 shares of the corporate stock. In arriving at a value of the stock the Court must consider any loss due to a breach of fiduciary duty owed by Mr. Queenan to Mrs. Queenan and the date upon which to make the valuation.
As to the date upon which to value the assets, R.S. 9:2801(4)(a) provides:
"The Court shall value the assets as of the time trial on the merits, determine the liabilities, and adjudicate the claims of the parties."
Trial on the merits was held February 1, 1982. Oral arguments were held June 16, 1982 and judgment rendered on that date.
Mike Queenan was the chief executive officer of Mike Queenan Equipment Co., Inc. Subsequent to a termination of the community, Mr. Queenan formed a second corporation in June of 1981 called Mike Queenan Rigging Co., Inc. of which he was also the chief executive officer. These two corporations operated under the same roof and the same address. Brochures describing the equipment available made no distinctions between corporations. It is obvious to this Court that there was no justifiable reason to organize a second corporation. The only apparent usefulness of the second corporation was to bleed profits from the first corporation in which Penny Queenan owned 49.9% of the shares.
When examining the financial statements, (Penny-9) one notes that the book value of the Equipment company is $376,571.00. Since Penny Queenan owns 435 shares out of 871, she owns 49.9% of $376,571.00 or $187,908.00 in book value. It cannot be helped but note from Penny-9 that Mike Queenan was paid a salary of $192,203.00 and a receivable of $71,500.00. Such a salary in the context of this closely held corporation is clearly excessive and shocking to the conscious. Also shocking in view of the business outlook was the acquisition of three (3) Mercedes-Benz automobiles to be used by the chief corporate officer, his wife and his son.
In November of 1980, Mike Queenan acquired sole ownership of the shares of Mike Queenan Development Co., Inc. Subsequently, Mike Queenan Equipment Co., Inc. loaned the Development company $195,824.00 then wrote the loan off as a bad debt. Such a transaction cannot be permitted to lessen the value of the Equipment company shares.
The evidence further discloses that the book value of Mike Queenan Rigging Co., Inc. was $473,959.00 and 49.9% of this is $236,505.00. To recap, the adjusted and equitable book value of Penny's interest in the heavy equipment business is:

$187,908-49.9% of $376,571 (Equip. Corp.)
 236,505-49.9% of $473,959 (Rigging Corp.)
 97,716-49.9% of wrongful loan
________
$522,219Total Book Value Due Penny

To this must be added $16,241.00 due Penny from the accounting on the real estate, for a total due her of $538,460.00.
The Court does not at this time fix any specific terms for payment of the sum due Penny Queenan but suggests that terms can best be worked out by mutual agreement of the parties. Such agreed upon terms will then be made a part of a formal judgment. If an agreement on terms cannot be reached then a judgment in the full sum of $538,460.00 will be awarded Penny Queenan against Mike Queenan together with legal interest thereon. All costs of this proceeding are taxed against Mike Queenan.
A formal decree will be signed when presented.
 /s/ L.E.Hawsey, Jr.
 L.E. HAWSEY, JR.
 District Judge
 Lake Charles, Louisiana
 October 11, 1984

[2] OF ERRORS
ERROR NO. 1.
The trial court erred in holding that the general property law includes as to co-owners the law of partnership.
ERROR NO. 2.
The trial court erred in holding that the general property law includes as to co-owners the corporation law.
ERROR NO. 3.
The trial court erred in finding that Mike Queenan breached the fiduciary obligations to Penny Queenan. The attempt by the trial court to incorporate the partnership law as to co-owners was an attempt to impose a greater fiduciary obligation on Michael Queenan than that required by law.
ERROR NO. 4.
The trial court erred in holding that the date upon which to value the corporate stock was February 1, 1982 rather than the date of the hearing from which this appeal emanates, October 27, 1983.
ERROR NO. 5.
The court erred in failing to give Mike Queenan credits for debts paid by him on behalf of the community for Queenan Development Co., Inc. after termination of the community and up until Penny Queenan divested herself of the corporate stock on November 13, 1980.
ERROR NO. 6.
The court erred in awarding Penny Queenan $14,400.00 as rentals due from Mike Queenan Equipment Co., Inc. on Country Club Road and Prien Lake Road properties but unpaid for the years ended June, 1982 and 1983.
ERROR NO. 7.
The trial court erred in holding that the parking of trucks and equipment owned by Mike Queenan Rigging, Inc. on the Country Club Road property leased by Mike Queenan Equipment Co., Inc. constituted a sublease of that property and in rendering judgment against Mike Queenan personally for $600.00 per month for that rental from March of 1981 through June of 1983.
ERROR NO. 8.
The trial court erred in finding that Mike Queenan actively harassed the tenants on Prien Lake Road and failed to use due diligence in renting the rent houses and in awarding $2,500.00 per month for three months to Penny Queenan for lost rentals.
ERROR NO. 9.
The trial court erred in holding that there was no need to organize a second corporation, Mike Queenan Rigging, Inc. and in awarding Penny Queenan one-half the book value of that corporation as of May 31, 1982.
ERROR NO. 10.
The trial court erred in awarding Penny Queenan one-half the book value of Mike Queenan Equipment Co., Inc. as of February 1, 1982 rather than the date of the hearing herein on October 27, 1983.
ERROR NO. 11.
The trial court erred in finding that Mike Queenan acquired sole ownership of Queenan Development Co., Inc. in November of 1980 and subsequently loaned the development company $195,824.00 through Mike Queenan Equipment Co., Inc. and then wrote that debt off as a bad debt.
ERROR NO. 12.
The court erred in its allocation of community obligations for which the parties were entitled to credit or reimbursement.
ERROR NO. 13.
The trial court erred in awarding legal interest to Penny Queenan and taxing Mike Queenan with all costs of these proceedings.
[3] Parenthetically, it is interesting to note that Michael Queenan and Penny Queenan physically separated on July 7, 1979. The book value of Mike Queenan Equipment Co., Inc. (the main bone of contention in this case) as of June 30, 1979, was $306,597.00. If a community property settlement could have been effected the day of separation, Penny Queenan would have been entitled to approximately one half (½) of this book value, or an amount of $153,298.50. If this sum had been invested promptly, the compounded interest thereon by the time of the October 27, 1983, trial date, would have brought this figure extraordinarily close to the book value ($204,467.56) awarded Penny Queenan by this decision.