# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #009

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of March, 2026** are as follows:

**BY Cole, J.:**

2025-C-00539    MICHAEL B. REIS, JR.  VS.  MANDY POHLMANN REIS (Parish of St. Bernard)

REVERSED AND REMANDED. SEE OPINION.

Griffin, J., concurs in the result.

**MICHAEL B. REIS, JR.**

**VS.**

**MANDY POHLMANN REIS**

On Writ of Certiorari to the Court of Appeal, Fourth Circuit, Parish of St. Bernard

**COLE, J. \***

We granted this writ application to determine whether the lower courts correctly found that a business entity created after the termination of a community property regime should be classified as community property. For the reasons that follow, we find the lower courts erred in classifying the business as a community asset and reverse those rulings. We remand the matter to the trial court for further proceedings.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Michael B. Reis, Jr., and defendant Mandy Pohlmann Reis were married on December 4, 2010, and established a community of acquets and gains. Mr. Reis filed a Petition for Divorce pursuant to La. C.C. art. 103(1) on August 29, 2019, and Ms. Reis filed an answer and reconventional demand shortly thereafter. Following a hearing, the parties were granted a Judgment of Divorce on October 24, 2019. Relevant to this matter, during the parties' marriage, on October 12, 2016, they formed the company Outkast Environmental, LLC ("Outkast Environmental"). The business generally engaged in industrial cleaning services, including tank

---

\* Judge Allison H. Penzato of the Court of Appeal, First Circuit, appointed as Justice pro tempore, sitting for the vacancy in the First District.

cleaning, pipeline cleaning, in-plant cleaning services, rail car cleanings, confined space rescue, and hazardous maintenance cleanup.

The parties entered into an interim consent judgment on January 9, 2020, which primarily addressed child custody, expenses related to the child, and co-parenting guidelines. The interim consent judgment also set forth directives to the parties regarding Outkast Environmental. The trial court's order stated:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** the parties shall have equal access to any and all records, payroll, accounts, documents, etc., pertaining to any businesses, including but not limited to Outkast Environmental LLC, in which the parties and/or any community have an interest in. Further, the parties are to execute any and all documents necessary to ensure that the Father's payroll check is deposited into his own separate account.

On or about February 12, 2020, after the divorce was final, Mr. Reis formed a separate company, Outkast Industrial Group, LLC (Outkast Industrial"), which performed similar functions as Outkast Environmental, and registered his new business with the Louisiana Secretary of State.

On April 2, 2020, the trial court entered a mutual permanent injunction, "restraining, enjoining, and prohibiting Michael B. Reis, Jr., and Mandy Pohlman Reis, their agents or assigns, from alienating, encumbering, or otherwise disposing of community property."[1]

On October 19, 2020, Ms. Reis filed her detailed descriptive list containing "all of the community assets and liabilities known to her," which included Outkast

---

[1] Several months later, on August 5, 2020, Outkast Environmental filed a Petition for Injunctive Relief and Damages Pursuant to the "Louisiana Unfair Trade Practices Act" (LUTPA) against Michael B. Reis, Jr., and Outkast Industrial Group, LLC, in the 34th JDC (St. Bernard Parish). The petition alleges that Mr. Reis, an employee of Outkast Environmental used his access to private financial and business records of Outkast Environmental to divert payments for services provided by Outkast Environmental to his newly formed company, Outkast Industrial. These activities, according to the petition, constitute "fraud, misappropriation, deception, theft, and other unethical behavior, all of which are [sic] violation of the Louisiana Unfair Trade Practices Act." Outkast Environmental requested injunctive relief to enjoin Outkast Industrial from engaging in further conduct violating the provisions of LUTPA. The record before this Court does not indicate the current status of this LUTPA action.

Environmental, LLC, showing an "unknown" value.[2]  Mr. Reis filed his detailed descriptive list the same date, reflecting, among other items, the financial accounts for Outkast Environmental, as of August 31, 2019 (he later amended this list on January 18, 2021).  Mr. Reis's descriptive list did not include any reference to Outkast Industrial.

Following unsuccessful attempts to partition their community assets and obligations, on September 2, 2022, Ms. Reis filed a "Petition for Judicial Partition of Community Property and Motion to File Descriptive Lists."  Ms. Reis filed an Amended Detailed Descriptive list on February 7, 2023, wherein she listed under "Other Property" both Outkast Environmental and Outkast Industrial, each with "Unknown" values.[3]  Ms. Reis filed a Motion to Traverse Descriptive List on April 13, 2023, alleging that Mr. Reis "failed to list Outkast Environmental, LLC, as community property even though the company was started during his marriage" to Ms. Reis.  She further alleged that Mr. Reis "failed to list Outkast Industrial, LLC, as community property even though the company was started with funds from the community of his marriage" to Ms. Reis.[4]

The motion to traverse was set for hearing on June 14, 2023, but was continued to July 29, 2024.  During the pendency of the motion, the parties agreed to bifurcate the proceeding, narrowing the scope of the hearing to specifically address classification of assets.  A separate trial on the merits would be set later to determine valuation after classification was established. La. R.S. 9:2801(4).

---

[2] When spouses are unable to agree on a partition of community property, either spouse may institute a proceeding requiring the filing of a detailed descriptive list of all community property, the fair market value and location of each asset, and all community liabilities.  La. R.S. 9:2801.

[3] The record also reflects that Ms. Reis filed another Amended Detailed Descriptive List on October 31, 2023.

[4] A substantial portion of the record before this Court contains lengthy discovery disputes and disagreements over child support and expenses related to the parties' minor daughter's dance activities.  Because they are irrelevant to the issues decided herein, we pretermit any discussion of those matters in this ruling.

The evidentiary hearing in the trial court focused solely on the classification of Outkast Industrial as either a community or separate asset. The court heard testimony from Ms. Reis, Mr. Reis, and Mr. Reis's son from a previous relationship. Ms. Reis testified regarding the 2016 creation of Outkast Environmental and the roles she and Mr. Reis each had in the business's operations. She primarily functioned as the office manager, processing payroll, managing accounts payable and receivable, and maintaining employee records. Mr. Reis solicited the jobs for the company and managed its employees and equipment.

Ms. Reis also testified that she first discovered the existence of Outkast Industrial in June 2020, following a court-ordered meeting[5] to facilitate a custody agreement. She also discovered a $40,000 withdrawal not made by her from a joint bank account on February 14, 2020. Ms. Reis testified as to her belief the $40,000 was used by Mr. Reis to start operations at Outkast Industrial. Ms. Reis also explained that the rate schedules (lists of personnel used in field operations and the rates to be charged) for Outkast Environmental and Outkast Industrial were virtually identical. She also claimed invoices showing employees of Outkast Environmental were being paid by Outkast Environmental from April to June 2020 but were doing work on Outkast Industrial jobs during that time. Cory Reis, Mr. Reis's son, disputed this, testifying that Outkast Industrial employees who had previously worked for Outkast Environmental were not paid by Outkast Industrial while still employed by Outkast Environmental.

Ms. Reis admitted that when Outkast Environmental was originally created, it was organized in her name. Mr. Reis was never added as a member of Outkast Environmental and had no formal role in its management.

---

[5] Dr. A. James Klein, a psychologist appointed by the Court to review the custody arrangement, noted in his report in September of 2020 that "[c]onflict between these parents has been fueled by their joint ownership of a Limited Liability Company and legal entanglements that have impaired cooperative co-parenting."

In his testimony, Mr. Reis stated he did not use any funds from a joint account to fund his establishment of Outkast Industrial. He instead financed Outkast Industrial with a $60,000 loan from a friend, evidenced by a promissory note dated February 13, 2020. Mr. Reis testified that he deposited $40,000 of that amount into an account for Outkast Industrial and used the remaining $20,000 for various business expenses. He admitted that he hired employees for Outkast Industrial, despite those individuals still being employed by Outkast Environmental. Mr. Reis asserted the two companies were separate and distinct, urging that while Outkast Environmental performed regular confined space rescue, Outkast Industrial instead performed high angle confined space rescue, including cleaning and dredging oil spills. According to Mr. Reis, these two functions require different certifications.[6]

After taking the matter under advisement, the trial court issued its judgment and incorporated reasons on August 13, 2024, finding Outkast Industrial to be a community asset. In its reasons for judgment, the trial court relied upon *Queenan v. Queenan*, 492 So. 2d 902 (La. App. 3 Cir. 1986)[7] and *Granger v. Granger*, 06-1615 (La. App. 3 Cir. 9/26/07), 967 So. 2d 540,[8] to conclude that a spouse has a duty to

---

[6] Throughout these proceedings, Mr. Reis has also alleged Ms. Reis improperly accessed and used former community property after the termination of the marriage. For example, he asserted she withdrew $30,000 from the community owned business account and withdrew $64,306.84 from an investment account. He also alleged she has continued to prohibit him from accessing the Outkast Environmental records, accounts, and documents, in violation of the trial court's order. Mr. Reis also alleged she has been using these funds from the community business for her own living and social expenses.

[7] The parties in *Queenan* terminated their community, but Mr. Queenan continued to manage three corporations that were part of the original community regime. Shortly thereafter, he formed a new corporation, operating it out of the same office as the family businesses. The new corporation experienced great success at the expense of the prior family corporations. Although the new corporation was formed after termination of the community, the *Queenan* court found Mr. Queenan breached his fiduciary duties regarding his control of the family businesses. Thus, the court treated the new corporation as "part and parcel of the community regime insofar as allocation and accounting purposes are concerned." *Queenan*, at 492 So. 2d at 913.

[8] The *Granger* parties owned an oilfield pipe inspection company during their community, in which Ms. Granger managed the office and the finances and Mr. Granger solicited business and supervised daily operations. Following Ms. Granger's petition for divorce but before the judgment of divorce, Mr. Granger was in control of the inspection company. During that time, the gross income of the company dropped significantly, eventually becoming worthless by the time the community partition occurred a decade later. Following the appointment of a receiver, Mr. Granger abandoned the former community company and formed a new corporation virtually identical to

5

preserve and manage a former community asset under their custody or control. Here, the trial court found Mr. Reis transferred community interest in Outkast Environmental to Outkast Industrial, thereby requiring the classification of Outkast Industrial as a community asset. Mr. Reis appealed.

The court of appeal affirmed, agreeing that Outkast Industrial is a community asset. *Reis v. Reis*, 04-750 (La. App. 4 Cir. 4/3/25), 418 So. 3d 79. The appellate court, also relying on *Queenan*, *supra*, and *Granger*, *supra,* concluded that Outkast Industrial is a "substitute corporation" for Outkast Environmental. *Id.*, 04-750, p. 16, 418 So. 3d at 90. The court acknowledged that Ms. Reis was actually managing the community business and the factual disputes regarding whether Mr. Reis used Outkast Environmental employees or equipment in forming his new business but concluded the trial court did not err in using La. C.C. 2369.3 to classify the new business as a substitute corporation.[9]

On appeal, Mr. Reis asserted that Outkast Industrial was separate based on the time of acquisition and the source of funds. However, the appellate court found a lack of credibility on the part of Mr. Reis regarding his source of funds argument, noting the record was unclear as to the facts surrounding the $40,000 withdrawn from the joint bank account, where the $60,000 loan money was deposited, or what Mr. Reis did with the extra $20,000 he indicated was for miscellaneous expenses associated with Outkast Industrial. Accepting the trial court's determination of Mr. Reis's lack of credibility, the court of appeal found no manifest error in reasoning that Outkast Industrial should be considered a community asset and therefore

---

the previous company. Relying on *Queenan*, the *Granger* court concluded that although the prior corporation was technically Mr. Granger's separate property (as in *Queenan*), Ms. Granger was entitled to one-half the value of the former corporation as her share in the community-owned business. *Granger*, 06-1615, p. 8, 967 So. 2d at 546.

[9] La. C.C. art. 2369.3 provides: "A spouse has a duty to preserve and to manage prudently former community property under his control in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect."

recognized as part of the community of acquets and gains between the parties. Mr. Reis sought supervisory review here and this Court granted his writ application. *Michael B. Reis, Jr. v. Mandy Pohlmann Reis*, 25-539 (La. 9/16/25), 418 So. 3d 892 (mem).

## DISCUSSION

The Louisiana Civil Code defines the matrimonial regime as "a system of principles and rules governing the ownership and management of the property of married persons as between themselves and toward third persons." La. C.C. art. 2325. A matrimonial regime may be legal, contractual, or partly legal and partly contractual. La. C.C. art. 2326. There is a presumption in the law that all married persons living in Louisiana are under the legal regime of acquets and gains (community property). *Robinson v. Robinson*, 99-3097, p. 5-6 (La. 1/17/01), 778 So. 2d 1105, 1113.

Property in Louisiana is characterized as either community or separate. La. C.C. art. 2335. Property "in the possession of a spouse during the existence of a regime of community of acquets and gains [is] presumed to be community, but either spouse may prove that [it is] separate property." La. C.C. art. 2340. Determination of the separate or community nature of property is a factual determination subject to the manifest error review. *Ross v. Ross,* 02-2984 (La. 10/21/03), 857 So. 2d 384, 395. La. C.C. art. 2338 explains:

> The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.

Separate property, as provided by La. C.C. art. 2341, is comprised of:

7

property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.

The classification of property as separate or community is fixed at the time of acquisition, and proof that the community had terminated at the time the property was acquired usually makes an asset separate. *See Robinson*, 99-3097, p. 6, 778 So. 2d at 1113.[10]

It is undisputed that Outkast Environmental, formed during the community regime of Mr. Reis and Ms. Reis, was community property. As noted above, the community regime between the parties terminated on October 24, 2019. Outkast Industrial, on the other hand, was formed by Mr. Reis on or about February 12, 2020, four months after the termination of the community. Thus, the presumption of community does not apply to Outkast Industrial and Ms. Reis bears the burden of disproving its classification as separate property.[11,12]

The lower courts erred in relying on *Queenan* and *Granger* to conclude that Outkast Industrial is a "substitute corporation" for Outkast Environmental such that

---

[10] "Proof that no community regime existed or has terminated at the time property was acquired would also usually make an asset separate property. An exception to this general principle arises when the property is acquired after termination of the regime from property or rights acquired during the regime. However, even in those cases, no presumption of community applies." Andrea Carroll, Bradford H. Felder, Richard D. Moreno, *Matrimonial Regimes*, 16 La. Civ. Treatise, § 4:13 (5th Ed. 2025) (internal citations omitted).

[11] *Accord Lanza v. Lanza*, 04-1314, 04-1756, p. 17 (La. 3/2/05), 898 So. 2d 280. 290 (finding no presumption of community as to renewal commissions because the income at issue did not come into the husband's possession during the community regime, citing La. C.C. art. 2340).

[12] These facts are distinct from circumstances in which a spouse proves community funds were used to satisfy separate debts following the termination of the community.

it should be considered part of the community property partition. The concept of a "substitute corporation" does not exist in Louisiana law. The reasoning in *Queenan* and *Granger*, specifically their discussion of the "technical or legal extension of the community regime until settlement," is not based in law and has been roundly criticized.[13] The court of appeal's use of either case as instructive under the facts of this matter was error.[14] Moreover, the lower courts failed to acknowledge the Civil Code principles set forth in articles 2338 and 2341 concerning classification of property in matrimonial regimes. We decline to perpetuate these extra-legal fictions, and we find that Outkast Industrial, Mr. Reis's company formed after termination of the community, is his separate property and not part of the former community regime.[15]

---

[13] One treatise explained that "[t]he sole purpose of Article 2369 is to assure that former community assets do not disappear. It was not intended to impose a more general, ill-defined "fiduciary" duty upon each spouse." Andrea Carroll, Bradford H. Feder, Richard D. Moreno, 16 La. Civ. L. Treatise, Matrimonial Regimes § 7:19 (5th ed. 2025) (footnote omitted). These commentators further noted:

> In *Queenan v. Queenan*, 492 So. 2d 902 (La. Ct. App. 3d Cir. 1986), the Third Circuit Court of Appeal recognized that a former spouse owed a fiduciary duty to the other spouse after termination of the community regime. However, the court did so by concluding that "(u)ntil there is a community property settlement, there exists a practical or empirical extension of the community regime insofar as the duties and obligations of the former spouses relate to each other in the management of the community assets." 492 So. 2d at 912. ***The court cited no authority for such a proposition, and the matrimonial regimes legislation does not support the conclusion.*** See also *Terry v. Terry*, 565 So. 2d 997, 1001 (La. Ct. App. 1st Cir. 1990), which cites the same language from the *Queenan* case.

> *Id.,* n. 24 (emphasis added).

[14] *See also,* Andrea Carroll, Bradford H. Feder, Richard D. Moreno, 16 La. Civ. L. Treatise, Matrimonial Regimes § 4:13 (5th ed. 2025). The authors noted that the principle of real subrogation may operate to rebut the presumption of community and applies when separate property is transformed into another form of property during the legal regime. Under this principle, the characterization of property does not change simply because the property changes form. However, the commentators found *Granger* to be a "troubling aspect of this area of matrimonial regimes law" and "a troubling extension of the third circuit's well-criticized 1986 decision in *Queenan v. Queenan.*"

[15] Then-Judge Genovese's concurrence in part and dissent in part in *Granger* is persuasive. While he agreed that Mr. Granger had a fiduciary duty as the spouse in control of a former community asset and should be answerable for damages caused by his fault or neglect, he disagreed with the labeling of the new corporation as a "substitute corporation" and the award of one-half of its value to Ms. Granger. He noted there is no support in the record nor the law to find a "substitute corporation" was created by Mr. Granger, nor was there any basis to award Ms. Granger one-half

Mr. Reis acknowledges that the classification of Outkast Industrial as separate property is based upon "date of acquisition" and "source of funds," but notes the trial court did not address the source of funds at all in its findings.[16] Mr. Reis also asserts the court failed to explain how the principle of real subrogation pertains to conversion of separate property into community property, particularly when that property is formed after the termination of the community and its value is based on his business efforts and labor after dissolution of the community. We agree. This loan or investment into a separate business is one of many variables contributing to that business's subsequent operation or success. Under the facts of this case, we do not find that the disputed "source of funds" could provide a valid basis to classify Outkast Industrial as community property. Rather, it pertains to other alleged mismanagement and potential breach of fiduciary duty under La. C.C. art. 2369.3.

Although we decline to rule on the merits of any possible causes of action, we note Ms. Reis may seek remedies for any alleged mismanagement of Outkast Environmental, as the Civil Code imposes a higher standard of care in managing and maintaining former community property than the standard imposed during marriage. *See* cmt. (a) to La. C.C. art. 2369.3 ("The reason for imposing a higher standard of care in managing former community is that, after termination of the community property regime, the law no longer assumes that a spouse who has former community property under his control will act in the best interest of both spouses managing it."). Specifically, La. C.C. art. 2369.3 provides that a spouse maintains a duty to preserve

---

the value thereof. *Granger v. Granger*, 06-1615 (La. App. 3 Cir. 9/26/07), 967 So. 2d 540 (Genovese, J., dissenting).

[16] Mr. Reis is accurate in his characterization of the trial court's reasons for judgment. With no specific discussion of any source of funding, the trial court concluded that Mr. Reis "transferred any goodwill he had in OE [Outkast Environmental] to OIG [Outkast Industrial Group]" and intended for Outkast Industrial to be a "branch or division of OE [Outkast Environmental]." In short, the trial court found that because Mr. Reis took steps to create a business which conducted the same scope of work as the former community business, he "transferred the communities [sic] interest in Outkast Environmental, LLC, to Outkast Industrial Group, LLC." *Trial Court Judgment,* pp. 2-3.

former community property and is answerable for damages caused by a breach of that duty:

> A spouse has a duty to preserve and to manage prudently former community property under his control in a manner consistent with the mode of use that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect.

These codal provisions and other statutory provisions that may apply to the conduct alleged by Ms. Reis, if proven true, are the actual solutions provided by our law.[17] Therefore, this Court rejects reliance on the jurisprudence applied by the lower courts that substitutes judge-made remedies in place of the express provisions of Louisiana law supplied by the legislature.

Again, even if Mr. Reis appropriated employees, equipment, or business from Outkast Environmental (which is an issue not presently before this Court), these actions would not create a "substitute corporation." Nor does Mr. Reis's alleged mismanagement or potential breach of fiduciary duty under La. C.C. art. 2369.3 change the classification of an entity that is separate property to community property. *Accord* Andrea Carroll, Bradford H. Fedler, Richard D. Moreno, 16 La. Civ. L. Treatise, Matrimonial Regimes § 4:13 (5th Ed. 2026 update).

### DECREE

Considering the foregoing, we find that Mr. Reis's company, Outkast Industrial, was formed after the termination of the community regime between the parties and is thereby his separate property. The lower courts erred in finding otherwise and their rulings are reversed. This matter is remanded for any necessary proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[17]As discussed in note 1, *supra*, it appears Ms. Reis began a LUPTA action on behalf of the old company against the new company squarely directed at the conduct at issue herein.

11